DAVIS *v.* CHAPMAN.

*(Circuit Court, D. Indiana.	August 13, 1885.)*

1. TAX SALE—INDIANA STATUTE—TITLE ACQUIRED BY HOLDER OF CERTIFICATE —STATUTE OF LIMITATIONS.
   While the statute of Indiana provides that a certificate of sale of realty for taxes shall entitle the holder to possession, such certificate does not confer the right of possession unless the sale was regular and valid. And when one takes possession under the invalid certificate, he is accountable for rents; and, after receiving rents enough to repay the amount of his bid, penalties, and interest, will not be considered as holding a certificate which, constituting in the beginning a mere lien, can grow by lapse of time, under a statute of limitations, into a title at law, or into a defense against such a title. *Barton* v. *McWhinney*, 85 Ind. 481, followed, and *Ethel* v. *Batchelder*, 90 Ind. 520, distinguished.

2. SAME—MERGER.
   The lien of a purchaser at an invalid tax sale of realty will be merged in the fee if that be obtained by the holder of the tax certificate; and if afterwards he lose the fee by failure to redeem from a sheriff's sale of the property, the tax lien will not be revived to such extent as to support a running of the statute of limitations, in respect to tax sales, during the time of the merger.

3. SAME—PURCHASE BY TENANT IN COMMON.
   Where a tenant in common, with his own money, purchases the interest of his co-tenant at tax sale, but the sale is irregular and invalid, and vests him with a lien only upon the property, which by lapse of time may ripen into a title, but before that occurs he receives rents sufficient to reimburse him, he must apply the rents in that way and not permit the statute to run.

At Law.

*J. M. Van Fleet* and *Hill & Lamb*, for plaintiffs.

*Harrison, Miller & Elam*, for defendants.

WOODS, J.	Ejectment to recover the undivided half of certain town lots in Warsaw, Kosciusko county, Indiana. Upon these lots are the Kirtley House and Kirtley House livery-stables; the house and stables

being separated by a public alley which divides the lots into two distinct parcels. The entire property was owned in 1858 by Joseph Popham, and afterwards by one Kirtley, who, before August 28, 1873, had conveyed an undivided half to the defendant, Chapman, who still owns it, and on that day conveyed the other half to Charles Ford, who, on the twenty-second day of July, 1875, mortgaged his interest to Nelson Davis. This mortgage was foreclosed December 11, 1875, by order of the Kosciusko circuit court; and by virtue of the decree the interest of Ford was duly sold on the twenty-second day of January, 1876, to the plaintiff, Rebecca Davis, assignee of the decree, who, after the expiration of a year, received a sheriff's deed, whereby she obtained a perfect legal title, which she still holds, unless it has been divested or defeated by reason of the facts yet to be stated.

On the eighth day of February, 1875, Ford's half of the property was sold to Chapman at tax sale for $196.75, delinquent taxes of the years 1873–74, and the usual form of certificate of sale issued to the purchaser. The sale was of the undivided half of the entire property, and not of the different parcels separately. After two years Chapman surrendered his certificate and received an auditor's deed, and that being defective because not witnessed by the county treasurer, he took a second deed, dated December 30, 1877. On May 1, 1875, Chapman, being a tenant in common with Ford, claims to have taken exclusive possession of the entire property under and by virtue of his certificate of purchase at tax sale, and to have continued to hold by the same right to the present time. From the time of taking possession as stated, he received of the lessee of the entire property, who, it is claimed, attorned to him at that date, rent at the rate of $100 per month. It does not appear that, upon taking or while holding the possession, he made any open or notorious claim of right hostile to his co-tenant, or that the co-tenant in fact had notice of his hostile intent or claim. On March 18, 1875, Chapman obtained in the Kosciusko circuit court a decree of foreclosure against Joseph Popham of a mortgage executed by Popham in 1858, upon the entire property; and on October 9, 1875, in the same court obtained a judgment against Ford upon notes alleged to have been given by Ford to Kirtley upon the purchase price of the part of the property conveyed by Kirtley to Ford, and at the same time obtained a decree declaring a vendor's lien upon that part of the property for the amount of the judgment; and by virtue of these decrees the property described in each was duly and separately sold by the sheriff, and bid off by Chapman, who, on November 15, 1875, received, and caused to be recorded, sheriff's deeds made in consummation of the sales. On the seventeenth day of February, 1876, the plaintiff instituted in the Kosciusko circuit court an action against the defendant to have the said decrees, and the sales made thereunder, annulled as against her, and on the second day of April, 1880, obtained a decree to that effect,

which remains in force. On May 6, 1880, the plaintiff demanded of the defendant to be admitted into possession and recognized as his co-tenant of the property. This the defendant refused. The complaint in this case was filed May 14, 1884.

The tax law of 1872, in force at the time of the tax sale mentioned, contains the following provisions: Sec. 199, (in effect,) that two or more parcels belonging to one person shall not be sold together, but each parcel must be sold separately to the highest bidder. Sec. 203: The certificate of sale "shall entitle the holder to the possession of the premises therein described." Sec. 250: "No action for the recovery of real property sold for non-payment of taxes shall lie, unless the same be brought within five years after the date of the sale." Sec. 256: "If any conveyance shall prove to be invalid and ineffectual to convey title, the lien which the state had on such land shall remain in force, and shall be transferred by such deed to the grantee, and vested in him, his heirs and assigns," etc.

Upon these facts counsel for Chapman insist that he has a complete defense under his tax title in the statute of limitation. To this counsel for the plaintiff reply (1) that the tax sale was invalid and gave the purchaser only a lien upon the property, and that that lien was merged and lost in the title which Chapman obtained by his purchases under the decrees against Popham and Ford; (2) that within four or six months after the sale Chapman received rents enough to cancel his lien, and by law was bound to apply the rents in that way; and (3) that, being a tenant in common with Ford and with the plaintiff, Chapman could not, under a tax sale, acquire a hostile title.

While the statute provides that a certificate of sale for taxes shall entitle the holder to possession, the supreme court of the state has explicitly decided that the certificate does not confer the right of possession unless the sale was regular and valid. *Barton* v. *McWhinney*, 85 Ind. 481. The case of *Ethel* v. *Batchelder*, 90 Ind. 520, was decided on the assumption that the sale was regular; and in the opinion it is said *obiter* that the right of possession under the certificate "carried with it the right to receive the rents of such real estate, and the absolute ownership of such rents, without liability to account therefor;" but this language, when interpreted and restricted by the facts of the case, means no more than the actual decision made, and that is, that when possession has been taken under a certificate of tax sale in all respects valid, a redemption from the sale cannot be had by an enforced application of the rents or rental value of the property, but "only in the manner prescribed by the statute." An explicit statutory mode of redemption having been provided, it was not for the court, in the absence, at least, of averment of insolvency of the holder of the certificate, or of other showing of equitable necessity, to say that redemption might be effected by an accounting for and application of rents and profits. The question of liability for rents after redemption, accomplished in the statutory way, was not before the court; and

it is hardly probable that it will ever be held that the holder of a tax title, even if valid, who has had possession under a certificate, after receiving back, within the time given for redemption, the amount of his bid, with the large penalties and interest allowed him by the statute, will be entitled to retain as his own rents and profits received or enjoyed during or for the time of his possession. The statute gives him the right to take possession under his certificate, and provides that within two years there may be a redemption, but is silent in respect to rents and profits in case redemption is effected. The plain and just legal inference in such cases is that the redemption shall relate back to the date of sale; and this done, accountability for rents follows. This, it seems to me, would be the rule in respect to sales upon execution and decrees of court, (sales on which something like the value of the property is supposed to be bid,) if the law, saying nothing of rents, gave the purchaser immediate possession under his certificate of purchase, subject to the owner's right of redemption within one year as now allowed. It would certainly shock the common sense of justice and right if in such cases the purchaser, besides receiving his money and large interest, could retain a year's rents and profits; and the courts, as it seems to me, would be slow to reach, as upon principle, and I believe upon authority, they would be under no compulsion to reach such a conclusion; certainly not in favor of claimants under tax sales, in respect to which, by common if not universal consent, a strict construction is employed, which concedes to the purchaser only what a nice judicial acumen cannot deny by turning against him every possible intendment deducible from the letter or spirit of the law.

But whether these views of the decision in *Ethel* v. *Batchelder* be right or wrong, there is no inconsistency between that and the decision in *Burton* v. *McWhinney*, from which, as well as from principles of justice and right, it follows logically and necessarily that if the tax sale be invalid, as the one in this case clearly was, because of the sale of two parcels together for one price, if for no other reason, the holder of the certificate who takes possession holds without right, and is accountable for rents; and, after receiving rents more than enough to repay the amount of his bid, penalties, and interest, ought not to be considered as holding a certificate which, constituting in the beginning a mere lien, can grow by lapse of time, under a statute of limitations, into a title at law, or into a defense against such a title. In opposition to this view, it is urged that the plaintiff has sued at law, and must recover upon the strength of her title, unaided by equitable considerations; and that the statutory time having run in the defendant's favor, no inquiry can be made in respect to the validity of the tax certificate under which he held possession. But we have seen already that the plaintiff has a perfect title at law; and consequently our inquiry is confined to the question whether or not a good defense is made out under the five-years limitation pre-

scribed by the tax law. It is a begging of the question to say that the lapse of five years or more between the date of the tax sale and the bringing of the action precludes inquiry in respect to the defendant's rights under the certificate before the period of limitation had gone by. The burden was upon the defendant to show that he held possession, or at least claimed right to the property, under the certificate, in such manner as to put and keep the statute running for the full period continuously in his favor. As already stated, his certificate at first clothed him with a lien only,—an equity,—but, by force of the statute, that equity might, in five years, have become a perfect defense to an action of ejectment. *Farrar* v. *Clark*, 85 Ind. 449. Did it do so, is the question; and this inquiry, being at every step about an equity, necessarily brings under review every pertinent consideration, whether of a legal or equitable nature.

In addition to the fact that soon after taking possession, and long before he made certain repairs upon the property, Chapman had received in rents more than enough to cancel his tax certificate, it may be observed that the proof fails to show that the statute ever commenced to run in his favor. He was co-tenant first with Ford, and after Ford with the plaintiff, of property of which he bought the co-tenant's undivided half at the tax sale; and it may well be doubted whether or not, under the circumstances, he can be allowed to assert title under his purchase. In *Bender* v. *Stewart*, 75 Ind. 88, it was held that a tenant in common could not, with funds derived from the common property, purchase the interest of his co-tenant at tax sale; and by the same principle, if he purchases with his own money, but the sale is irregular and invalid, and vests him with a lien only upon the property which, by lapse of time, may ripen into a title, but before that occurs he receives rents sufficient to reimburse him, he must apply the rents in that way, and not permit the statute to run. See the following authorities cited by counsel: Cooley, Tax'n, 346; 4 Kent, Comm. 371, note *a ; Van Horne* v. *Fonda*, 5 Johns. Ch. 388; *Rothwell* v. *Dewees*, 2 Black, 618; *Lloyd* v. *Lynch*, 28 Pa. St. 419; *Maul* v. *Rider*, 51 Pa. St. 377; *Phelan* v. *Boylan*, 25 Wis. 679; *Dickinson* v. *White*, 21 N. W. Rep. 153.

In *Elston* v. *Piggott*, 94 Ind. 14, it is said: "The general rule unquestionably is that one tenant in common cannot, by purchasing an outstanding lien, acquire a title which will evict his co-tenant." To same effect, *Bissell* v. *Foss*, 114 U. S. 252–259; S. C. 5 Sup. Ct. Rep. 851.

But, aside from this view, it may be noted that, as between tenants in common, a purchase by one of the other's interest under an outstanding lien or claim is not necessarily hostile to the right of the other. The presumption is the other way, and in order to found a hostile right upon the purchase, except for reimbursement, an ouster must be shown, or at least notice to the co-tenant of the adverse claim, or such open and notorious assertion of it as to be equivalent to an

ouster. *Jenkins* v. *Dalton*, 27 Ind. 78; *Bowen* v. *Preston*, 48 Ind. 367; *Nicholson* v. *Caress*, 76 Ind. 24; *Vance* v. *Schroyer*, 77 Ind. 501.

Nothing of the kind is shown here. On the contrary, instead of an open assertion of title or right under the tax certificate, the defendant in November, 1875, claimed title under the decrees against Ford and Popham, and from February 17, 1876, to April 2, 1880, upheld that claim against the plaintiff, saying nothing of the tax title, which, if good, he might have brought forward as a complete bar to the plaintiff's action, and which, as a lien, he might have had declared and enforced, though at law strictly it had been merged in the title obtained under the decretal sales. If at any time it may be said that the evidence shows an assertion of exclusive right under the tax title by the defendant against his co-tenant, it was not until the sixth day of May, 1880, when he refused to admit the plaintiff into possession or to recognize her right. But the suit was brought before the end of five years from that time.

In the opinion of the court the defense claimed under the tax certificate fails upon the other ground named; that is, upon the doctrine of *merger*. The objection made to this view is that the plaintiff procured a decree against the defendant annulling the decrees which he had obtained against Ford and Popham, and setting aside the title which the defendant obtained by means of the sales under those decrees, and that she cannot, in the face of her own decree, now assert the validity of that title in order to support the alleged merger. This does not seem to the court conclusive on the point. Under the decree against Ford the defendant on the fifteenth day of November, 1876, acquired Ford's title, which was yet good at law, though liable to be divested if redemption from the sale to the plaintiff were not effected by the twenty-second day of January, 1877. During this time the legal title, with the right of redemption, was in the defendant. *Elston* v. *Piggott, supra; State* v. *Sherill*, 34 Ind. 57; *Felton* v. *Smith*, 84 Ind. 485; *Wilhite* v. *Hamrick*, 92 Ind. 594. But, claiming in himself the superior equity as well as the title, the defendant stood upon that claim until the court declared it void as against the plaintiff; but it was good in the beginning, remained good until the right of redemption was lost, and if he had recognized the plaintiff's right by redeeming from her purchase, it would never have been disturbed. The merger, therefore, was once complete at law, and must be deemed to continue unless for equitable reasons the lost right should be revived. But if the defendant can invoke equitable considerations in order to preserve or revive his lien, the plaintiff may have the benefit of the countervailing equities, which are certainly strong enough to forbid the preservation of the tax lien, in such manner as to enable him to say that he had been claiming title under it all the while, (when in truth he had not,) and that consequently the statute of limitation was all the time running in his favor. All that equity could concede to him under the circumstances, on account of the judgment against him

in favor of the plaintiff, would be the right to reassert his lien under the tax certificate, and perhaps to claim the statutory interest for the time of the merger, but not so as by relation back to support a fictitious running of this statute of limitation against the true owner.

The finding and judgment must be for the plaintiff.    So ordered.