## McCREADY v. FREDERICKSEN.

No. 2357.   Decided August 5, 1912 (126 Pac. 316).

1. TENANCY IN COMMON—PURCHASE BY COTENANT—RIGHTS AC-
   QUIRED. Where the interests of tenants in common in real
   estate are segregated, as where the interest of one is separately
   assessed and sold for delinquent taxes, or where an execution is
   levied on such interest, based on a judgment against one for
   his individual debt, or where there is an outstanding title
   against the property from some source other than the one
   under which the tenants hold, one tenant may become a pur-
   chaser of such interest or title, and may ordinarily, acquire
   an interest in the premises as against his cotenant.   (Page
   394.)

2. TENANCY IN COMMON—PAYMENT OF TAXES—PURCHASE AT TAX
   SALE. A tenant in common may not acquire title as against
   his cotenant by purchasing at a tax sale.   (Page 394.)

3. TENANCY IN COMMON—RIGHTS OF TENANTS—OUSTER. Where one
   enters avowedly as a tenant in common with others, his pos-
   session is the possession of the cotenants, so long as the tenancy
   in common is not openly disavowed; and, before adverse pos-
   session by one tenant against a cotenant can begin, the one
   in possession must, by open and notorious acts, clearly show
   that his possession is intended to be exclusive, but he need not
   give actual notice to the cotenant.   (Page 396.)

4. TENANCY IN COMMON—RIGHTS OF TENANT—OUSTER. Where real
   estate owned by tenants in common is assessed in the name
   of one of the tenants, or in the name of all, without stating
   the interest of each, it is the duty of each to pay all the taxes;
   and the one who pays does so for the benefit of himself and
   cotenants, and his right against the cotenants is that of con-
   tribution only.   (Page 399.)

5. TENANCY IN COMMON—RIGHTS OF TENANT—OUSTER. Where a
   tenant in common purchased outstanding tax certificates before
   a sale for nonpayment of taxes had ripened into an indefeas-
   ible legal title, and paid subsequent taxes and obtained a tax
   deed, which was void, and thereafter conveyed the title to the
   whole property, limitations did not begin to run, as against
   the cotenant at least, until the conveyance; and the cotenant
   suing to quiet title within seven years after the conveyance
   was entitled to relief.   (Page 399.)

6. TENANCY IN COMMON—TAX TITLE—PURCHASE BY COTENANT—
   REMEDY. Where a tenant in common has the legal title to

an undivided interest in real estate, subject to claims against him for taxes paid by the cotenant and his grantee, the court, at the suit of the tenant in common, may quiet his title on condition that he pays his part of the taxes and accrued interest; and in case of default the premises must be sold, and out of the tenant's share the taxes and interest must be deducted, and the balance, if any, paid to him. (Page 401.)

Appeal from District Court, Third District; *Hon. F. C. Loofbourow,* Judge.

Action by John McCready against N. A. Fredericksen.

Judgment for defendant. Plaintiff appeals.

Reversed and remanded.

*Valentine Gideon* for appellant.

*C. S. Patterson* and *P. P. Christensen* for respondent.

FRICK, C. J.

On the 11th day of April, 1910, appellant commenced this action to quiet the title in himself to an undivided one-half interest in the real estate described in the findings. The respondent answered the complaint, and in his answer set up title in himself to the whole of the real estate in question, and prayed for a judgment or decree quieting the title thereto in himself. The appeal is upon the judgment roll without a bill of exceptions. The findings of fact made by the court, which in legal effect, for the purposes of this decision, may be treated as an agreed statement of facts, are as follows:

"That on the 10th day of February, A. D. 1891, the plaintiff, John McCready, and one Fenno Wakeman were each the owner of an undivided one-half interest in the following described real estate situate in the county of Salt Lake, State of Utah, to wit: The E. ½ of the S. ½ of lot No. six (6), block No. thirty-nine (39), plat B, Salt Lake City Survey.

"That on the 17th day of February, A. D. 1897, the property hereinbefore described was, by the officers charged with

such duty, sold to Axel Olsen for the delinquent taxes on said property for the year 1896, and a certificate of such sale issued to the said Axel Olsen, which said certificate was duly recorded in the office of the county recorder of Salt Lake County, Utah, on the 22d day of March, 1897, in a book therein provided by law to be kept for that purpose, to wit, Book A of Tax Sales, page 27, line 18, of the records of said county.

"That on the 21st of December, A. D. 1897, the property hereinbefore described was, by the officers charged with said duty, sold to M. C. Moon for the delinquent taxes on said property for the year 1897, and a certificate of such sale issued to the said M. C. Moon, which said certificate was duly recorded in the office of the county recorder of Salt Lake County, Utah, on the 21st day of December, A. D. 1897, in a book therein, provided by law to be kept for that purpose, to wit, Book B of Tax Sales, page 3, line 9, of the records of said county.

"That each of said hereinbefore-described certificates of tax sale were by the holders thereof duly assigned in the year 1899 to Fenno Wakeman.

"That on or about the 6th day of March, A. D. 1901, George H. Wood, the duly elected, qualified, and acting auditor of Salt Lake County, Utah, executed and delivered to the said Fenno Wakeman a tax deed to the premises hereinbefore described, and to the whole thereof, which said deed recited that it is issued under and by virtue of a certificate of tax sale in which said property was sold to Axel Olsen for the unpaid taxes for the year 1896, and which said deed was filed for record in the office of the recorder of Salt Lake County, Utah, on the 6th day of March, A. D. 1901, and duly recorded in a book therein required by law to be kept for such purpose, to wit, Book 5F of Deeds, on page 126 thereof, of the records of said county.

"That in the years 1896 and 1897 the property hereinbefore described was assessed for taxation in the name of 'Fenno Wakeman *et al.*,' and was not assessed, nor any part thereof, in the name of the plaintiff, John McCready, although the

name of the said plaintiff appeared of record in the office of
the recorder of Salt Lake County in connection with the title
to an undivided one-half interest therein; that in neither of
said years was a tax notice sent to the plaintiff; that the as-
sessment roll for the year 1896 in Salt Lake County did not
contain the warrant required by law to accompany the dupli-
cate roll, authorizing the collector to collect the tax; that in
the publication of the delinquent tax list for the year 1896
the property was described as belonging to 'Fenno Wakeman
et al.'

"That the plaintiff, John McCready, has been engaged in
the retail dry goods business at Ogden, Utah, for the past
twenty years, but that he has, during all of said time, owned
real estate in Salt Lake City and paid taxes thereon; that he
ascertained in the year 1897 that the property hereinbefore
described was sold for taxes for the year 1896, and also knew
that it was sold again in the year 1897; that he knew of the
issuing and recording of the tax deed to Fenno Wakeman;
that he made no effort to pay the taxes assessed against said
land for the year 1896, or for any year since said date; that
in the year 1897, and for many years thereafter, there was
no right of way appurtenant to said land, which is in the cen-
ter of a block; and that there is still no right of way to said
land, except over other lands now owned by the defendant.

"That neither the said Fenno Wakeman, nor the defend-
ant, N. A. Fredericksen, at any time ever requested or de-
manded of the plaintiff that he pay his share of the taxes for
the year 1896 or 1897, or any subsequent years.

"That during all of the time since the 6th day of March,
1901, the said described premises have been protected by a
substantial inclosure.

"That during the years 1901, 1902, 1903, 1904, 1905,
1906, and 1907 the premises were cultivated by a tenant of
the said Fenno Wakeman, who occupied said premises by
virtue of an oral agreement, by the terms of which the said
tenant agreed to look after the property and endeavor to sell
it in return for the use thereof; that during each of said

named years the said tenant had a garden, and raised vegeta-
bles on the said described premises.

"That on the 15th day of October, 1907, the said Fenno
Wakeman and Jennie A. Wakeman, his wife, conveyed said
premises, by warranty deed, to the defendant, N. A. Fred-
ericksen. Said deed was filed for record in the office of the
county recorder of Salt Lake County, Utah, on the 30th day
of October, 1907, and recorded in a book therein required by
law to be kept for that purpose, to wit, Book 7Q of Deeds,
on page 101 thereof, of the records of said county.

"That since the 15th day of October, 1907, the said de-
fendant, N. A. Fredericksen, has caused said land to be
cultivated as a garden, has had a barn thereon, used by his
tenants, has extended the sewer along the side of said prop-
erty for its full length, and has caused a large number of
loads of earth to be hauled on said land for the purpose of
raising the grade thereof.

"That the said defendant and his grantor have paid taxes
on said described premises as follows: 1896, $8.39; 1897,
$7.95; 1898, $8.22; 1899, $8.07; 1900, $9.40; 1901, $11;
1902, $10.65; 1903, $10.61; 1904, $10.95; 1905, $11.44;
1906, $11.75; 1907, $13.80; 1908, $13.69; 1909, $14.13;
1910, $16.43. Said payments having been made on or about
the 1st day of November in each year, and the same being all
the taxes levied or assessed against said premises during said
years.

"That since the execution and delivery and recording of
the tax deed described in the fifth finding of fact herein the
said plaintiff has not offered to pay any portion of the taxes,
costs, and expenses incurred by reason of the said tax deed,
or taxes levied and assessed against said property since the
year 1896, until shortly before this action was commenced,
and in the early part of 1910, when the plaintiff called on
the defendant, N. A. Fredericksen, and offered at that time
to pay to him his share of all taxes assessed against said prem-
ises; that there has been no revenue derived from the said
premises since the year 1896, except the occupancy and use

by the defendant and the said Fenno Wakeman, as hereinbefore stated."

As conclusions of law, the court, in substance, found that the tax deed mentioned in the findings was void; that the defendant and his grantors had held the whole of the premises in question by adverse possession for a period of more than seven years next preceding the commencement of this action; that they had paid all the taxes assessed and levied against said premises during said time; that respondent had acquired the title to said premises by adverse possession of his grantors; that respondent therefore was entitled to a judgment or decree quieting the title to the whole of said premises in himself, and for costs. A decree was accordingly entered, quieting the title to the whole of said premises in respondent, and appellant has appealed, praying for a reversal of said judgment or decree.

The only errors assigned are that the conclusions of law are not supported by the facts found and are contrary to law, and that the judgment or decree is contrary to law.

In view of the importance of the principles involved, we have set forth the court's findings of fact in full. The questions that arise upon the foregoing facts, and which are to be determined, are: (1) Are the conclusions of law as found by the court supported by the facts found; and (2) is the judgment or decree contrary to law?

From the findings of fact it is conclusively established that the appellant and respondent's grantor, Fenno Wakeman, in the year 1891, were, and from thence forward continued to be, tenants in common of the premises described in the findings, each owning an undivided one-half interest therein, and that such relation continued up to the 15th day of October, 1907, when said Wakeman conveyed the whole premises to respondent, unless Wakeman's acts in paying taxes and in obtaining a tax deed, under the circumstances stated in said findings, severed that relation at an earlier date. The first question that arises, therefore, is: What are the mutual rights and obligations of tenants in common with respect to the real estate owned by them as such tenants? What inter-

est, if any, may one tenant acquire as against the other while the relation exists?

There is no doubt that where the interests of cotenants are segregated—that is, where, for example, the interest of one is separately assessed and offered for sale for delinquent taxes, or where an execution is levied upon such an [1, 2] interest, based upon a judgment obtained against one of the tenants only for his individual debt, or where there is an outstanding title against the premises from some source other than the one under which the tenants hold—then, under certain circumstances, one cotenant may become a purchaser of such interest or title, and may ordinarily acquire an interest in the premises as against his cotenant. May he do this, however, where the judgment is upon the whole land, and where it is obtained for a joint debt, or where the taxes are levied and assessed in the name of both as against the whole land, and are delinquent as against the entire premises?

In Black on Tax Titles (section 282), the author states the law upon the subject now under consideration in the following words:

"One of the most familiar applications of the rule under consideration is this: Where land is owned by joint tenants, coparceners, or tenants in common, and taxes are assessed upon it as a whole, and it is sold for nonpayment of the same, neither of the cotenants can purchase a title at the sale which shall be paramount to that of his companions, or operate to dissolve the relationship. His payment is regarded as simply discharging the assessment, and it will inure to the benefit of all. He acquires no other or greater interest than he held before, except that he has a claim upon the others for reimbursement according to their respective shares. This rule rests upon very obvious principles, and there is no possible question as to its justice and strict legality. For, in the first place, it is plainly a duty which any and each of the cotenants owes to the state to pay the taxes upon the whole tract when they are so assessed. And, of course, he must not be allowed to reap an advantage from his neglect of this duty. But, in addition to this, there is a strong objection to such a proceeding arising from the mutual relations of the parties. It is well illustrated in the following remarks by the court in Kentucky: 'As a general rule, one tenant in common, before partition, is not permitted to purchase in a superior outstanding claim for his

own exclusive benefit, and much less to use it for the expulsion of his cotenant. Such a purchase is considered in equity as inuring to the benefit of both, and the purchaser·is entitled to contribution. This principle arises from the privity subsisting between parties having a common possession of the same land, and a common interest in the safety of the possession of each, and it only inculcates that good faith which seems appropriate to their relative position.' "

In section 284 of the same book, the author also states the law to be to the effect that neither of the cotenants can acquire any rights in the premises as against his cotenant, except for contribution, by purchasing a tax certificate from one who has paid the taxes upon the premises owned by the cotenants. Nor can such cotenant acquire any right, except where the tax sale has ripened into a complete and indefeasible title prior to the time of the purchase by the cotenant. The latter transaction is generally held to be equivalent to purchasing an outstanding title from an independent source. In Freeman on Cotenancy, etc. (section 158), the rule applicable to the facts in this case is stated by the author as follows:

"As a general rule, no contenant will be permitted to assert against his companion a title acquired by purchase at tax sale for taxes imposed on their common property during their joint ownership. Tax titles affecting undivided interests may arise from a sale which includes the interest of all the owners, or from a sale which includes the interest of but one. Where, as in the former case, the cotenant purchasing at the sale is himself in fault for not making payment of the amount due on his own moiety, there is no doubt that his purchase cannot be enforced against his companions, except as a basis for compelling them to reimburse him for their *pro rata* of the sum paid to release the common property from a common burden."

In referring to the question now under consideration, Judge Cooley, in his work on Taxation (3 Ed.), p. 963, says:

"Some persons, from their relation to the land or to the tax, are precluded from becoming purchasers on grounds which are apparent when their relation to the tax and to the property is shown."

The author cites many cases in support of the doctrine and then, at page 966, proceeds as follows:

"The cases to which attention is called in the margin, and many others to which they refer, will show the application of the rule under a great variety of circumstances. It has been applied to cases where the default was only in part that of the purchaser, as where he was tenant in common with others."

In other words, a tenant in common is one whose relation to the tax and the property is such as ordinarily precludes him from acquiring title as against his cotenant by purchasing at a tax sale.

By reference to the cases cited in support of the foregoing texts, it will be found that all three of the authors are supported by the decisions of the courts. In *Sorenson v. Davis,* 83 Iowa at page 409, 49 N. W. at page 1005, Mr. Justice Given, in speaking for the Supreme Court of Iowa, lays down the rule in the following language:

"It is a well-established principle that a tenant in common cannot acquire title adverse to his cotenants by purchase at tax sale. He will be regarded as holding the title he thus acquires in trust for his cotenants, until the presumption is repelled by their refusal to contribute in payment of his outlays."

The doctrine laid down by the three distinguished authors and by the Supreme Court of Iowa is, however, not seriously questioned by counsel for respondent; but they insist that in this case the acts of Fenno Wakeman constituted an ouster of his cotenant, the appellant, and hence contend that the statute of limitations as against appellant was set in motion from the time of the ouster.

The real question to be answered therefore is: What acts as between cotenants amount to an ouster? Upon this question the authorities are, to say the least, conflicting. Some of the courts are inclined to be more liberal than others in construing certain acts as sufficient to constitute an ouster. In this connection it must be remembered that the possession, and even the use, by one cotenant of premises is always presumed to be the possession of all. Moreover, that any act of his which is calculated to protect the property against a lien, or sale, or otherwise, will also be pre-

sumed to be for the benefit of his cotenants; and this presumption prevails until the contrary is clearly made to appear. Although the decisions are in conflict with regard to what acts of one in possession are, in law, sufficient to constitute an ouster of his cotenant, yet, in view of the undisputed facts in this case, we are clearly of the opinion that under the great weight of authority the acts of Fenno Wakeman, prior to the time he conveyed the property in question to respondent, were clearly insufficient to constitute an ouster of his cotenant, the appellant. Counsel for respondent have cited a large array of cases which, they contend, support their contention that the acts of Fenno Wakeman, as set forth in the findings of fact, constituted an ouster of appellant, and that the statute of limitations was set in motion as against him from the time said Wakeman obtained the tax deed in question, although said deed was void upon its face under the former decisions of this court. Counsel rely upon the following cases: *Lavelle v. Strobel,* 89 Ill. 370; *King v. Michael,* 136 Ind. 20, 35 N. E. 509, 43 Am. St. Rep. 303; *Elder v. McClaskey,* 70 Fed. 529-542, 17 C. C. A. 251; *Winterburn v. Chambers,* 91 Cal. 170, 27 Pac. 658; *Packard v. Johnson,* 57 Cal. 180; *Clark v. Crego,* 47 Barb. (N. Y.) 599; *Baird v. Baird,* 21 N. C. 524, 31 Am. Dec. 399; *Van Gunden v. Va. C. & I. Co.,* 52 Fed. 838, 3 C. C. A. 294; *Knowles v. Brown,* 69 Iowa, 11, 28 N. W. 409; *Stevens v. Reynolds,* 143 Ind. 467, 41 N. E. 931, 52 Am. St. Rep. 422; *Davis v. Chapman* (C. C.), 24 Fed. 674; *Nelson v. Davis,* 35 Ind. 482; *Bennet v. N. C. S. & I. Co.,* 23 Colo. 470, 48 Pac. 812, 58 Am. St. Rep. 281.

While it is held in the foregoing cases that in case of ouster one cotenant may acquire title by adverse possession as against his cotenant, yet in every case referred to above there is some special ground or reason, which is not present in the case at bar, upon which the decision is based. In some of the foregoing cases, the decisions are based upon the fact that the grantee of one of the cotenants had been in possession under his deed, claiming title to the whole property, for the time required by the statute of limitations, and had thus acquired

title by adverse possession as against the claimant. In other words, the claim in those cases was the same as though the respondent had been in possession under the deed from Fenno Wakeman for the period of time required by our statute of limitations to acquire title by adverse possession. If in this case respondent had been in possession of the premises in question under his deed from Mr. Wakeman, and had paid the taxes thereon for seven years prior to the commencement of this action, a different question would be presented. The act of Mr. Wakeman in making a deed, whereby he in terms conveyed the title to the whole of the premises in question, was an unequivocal act, by virtue of which he clearly indicated to every one, including his cotenant, that he claimed the title to the whole of the premises in question. Such an act was therefore one which was notice to all the world that the grantor claimed title to the whole property, and thus excluded all others, including the appellant. We think the true rule with regard to what constitutes an ouster is stated in the case of *Elder v. McClaskey*, 70 Fed. at page 542, 17 C. C. A. at page 264, by Mr. Justice Taft, in the following words:

"Where one enters avowedly as tenant in common with others, his possession is the possession of those others, so long as the tenancy in common is not openly disavowed. Before adverse possession by one tenant in common against another can begin, the one in possession must, by acts of the most open and notorious character, clearly show to the world, and to all having occasion to observe the condition and occupancy of the property, that his possession is intended to exclude, and does exclude, the rights of his cotenant. It is not necessary for him to give actual notice of this ouster or disseising of his cotenant to him. He must, in the language of the authorities, 'bring it home' to his cotenant. But he may do this by conduct, the implication of which cannot escape the notice of the world about him, or of any one, though not a resident in the neighborhood, who has an interest in the property, and exercises that degree of attention in respect to what is his that the law presumes in every owner."

While some courts have gone to the extent of holding that there must be express notice of ouster or actual ouster by one cotenant of another before the statute of limitations is set

in motion, yet we think the weight of authority supports the foregoing statement of Mr. Taft.

Do the facts of this case bring it within the rule laid down in the foregoing quotation? We are clearly of the opinion that they do not; and, in view that the facts are not disputed, nothing is left, save to apply the law to the undisputed or conceded facts, and we are placed in as good a position to do this as was the trial court. What, then, did Mr. Wakeman do which can be construed as constituting an ouster of appellant, his cotenant? As we have seen, the whole land was assessed in the name of "Fenno Wakeman et al." Assuming that "et al." meant respondent, yet it is not a case where the cotenants had their interests assessed separately, and where each could have paid the taxes upon such interest, as is often found to be the case in the decided cases. Where the whole property is assessed in the name of one cotenant, or is merely assessed in the names of all without stating the interest of each, the courts generally hold that it is the duty of one cotenant, just as much as of the other, to pay all of the taxes. In other words, it is generally held that under such circumstances the one who pays does so, not only for the benefit of himself, but also for the use and benefit of all of his cotenants, and that the only right he has as against them is the right of contribution. This is clearly logical. The mere act of paying the taxes under such circumstances cannot be regarded as an act which in any way disturbs any right of the cotenant; but, under the law, the presumption always is that the act was for the use and benefit of all interested in the premises.

The purchase of the outstanding tax certificate by Wakeman was, in legal effect, no more than the payment of the taxes by him would have been as between him and appellant. In relieving the property from the tax lien, appellant had the right to rely on the presumption that Wakeman acted for both. This presumption prevailed until Wakeman took some step or did something from which it was clearly inferable that he intended to and did exclude his cotenant, the appellant. Wakeman's acts up to the time he con-

veyed the whole property to respondent, when keeping in mind his relation to the property and to appellant, were not such as would necessarily be construed by any one to amount to a claim by him of title to the whole of the property. Indeed, all of his acts and conduct up to the time he made the deed to respondent were such as could readily be reconciled with the legal presumption that what he did was for the benefit of his cotenant, as well as for the benefit of himself. To merely have paid the taxes under the circumstances would not have conferred any right upon him to claim the whole property by adverse possession. To purchase the tax sale certificate before the sale had ripened into a complete and indefeasible legal title, and the subsequent payment of taxes could have no greater effect than the continuous payment of taxes would have had. To pay the taxes was clearly for the benefit of Mr. Wakeman, and did no more than to relieve the property from the statutory tax lien. Purchasing the tax certificate under the circumstances as between Wakeman and appellant could have had no greater legal effect than the payment of the taxes. But when Mr. Wakeman undertook to convey the whole title to the property he assumed a different attitude. Assuming, without deciding, that Wakeman's act of conveying the title to the whole property may be deemed and taken as an ouster of his cotenant, yet this act occurred only about two and one-half years before this action was commenced. In no event, therefore, did the statute of limitations begin to run until the conveyance aforesaid; and, as that occurred less than seven years prior to the commencement of this action, respondent's claim of title by adverse possession cannot be sustained. It is not necessary to refer to any of the other acts of Wakeman, which are specifically set forth in the findings of fact. All of his acts were readily reconcilable with the legal presumption hereinbefore referred to. We are of the opinion, therefore, that the court erred in applying the law to the undisputed facts.

When this action was commenced, appellant still held the legal title to an undivided one-half interest in the premises in question. As against this title, neither Wakeman nor re-

spondent had any claim, except the claim for taxes, general and special, and accrued interest, and possibly for such contribution as the law provides for as between cotenants when betterments or improvements are made upon the joint property. We think that, in view of the undisputed facts of this case, the court has power to make a decree quieting the title to an undivided one-half interest in the premises in question in appellant conditionally. That is, the court may quiet the title in him upon condition that he pay into court, within a time to be fixed by it, his proportion of the taxes and accrued interest and such other sum as the court may find he should pay under the law. In case of his default, however, the court should order the premises sold, and out of appellant's half of the proceeds deduct the taxes and interest and such other amount, if any, as the court may find legal and just as aforesaid. The balance, if any, remaining of said one-half should be ordered to be paid to appellant, after deducting the costs of sale. In case, however, appellant shall pay the taxes and accrued interest thereon, together with any other sum that the court may find legal and just, the title to a one-half interest in said premises should be quieted to him.

The judgment is therefore reversed, and the cause remanded to the district court, with directions to set aside the conclusions of law and judgment or decree in favor of respondent, and to substitute conclusions of law and enter judgment or decree in favor of appellant in accordance with the views expressed in this opinion. Appellant to recover costs.

McCARTY and STRAUP, JJ., concur.