Mary P. MASSEY, Plaintiff and Respondent,

v.

Lewis H. PROTHERO and Alene Prothero, Defendants and Appellants.

No. 18213.

Supreme Court of Utah.

May 2, 1983.

Thomas M. Higbee, Hans Q. Chamberlain, Cedar City, for defendants and appellants.

Willard R. Bishop, Cedar City, for plaintiff and respondent.

STEWART, Justice:

This is an appeal in a quiet title action. Plaintiff Mary Prothero Massey and defendant Lewis H. Prothero are sister and brother and are cotenants of real property inherited from their parents. After a trial on the merits, the district court held that Lewis could not extinguish the rights of Mary and other cotenant-heirs in the property by buying it at a tax sale. We affirm.

The trial court found the following facts. The real property in dispute consists of seven parcels of land located in Paragonah, Utah. The Paragonah property was originally owned by Jonathan and Amy Barton Prothero, the parents of Mary, Lewis, and five other children: Evelyn, David, Rex, Raymond, and Roe. At the time of trial, the only surviving heirs of Jonathan and Amy were Mary, Lewis, and Evelyn, and three heirs of Rex.

In 1953, Jonathan Prothero died intestate, and no probate proceedings were ever held. In 1958, Amy Prothero died, also intestate and also without an ensuing probate. Accordingly, the Paragonah property passed to her heirs as tenants in common. In 1961, while Lewis was visiting Mary at her home in California, they discussed the need to probate their parents' estates. It was agreed that Mary would give Lewis the deeds to the Paragonah property, and that Lewis would in turn conduct the necessary probates so that the surviving Prothero children would receive their appropriate inheritances. However, Lewis never carried out his promise.

From the death of Jonathan Prothero onward, various family members lived in the family home, which is located on a parcel of the Paragonah property. They all eventually moved away, but would occasionally visit the home for special occasions. The family understanding was that whoever occupied the home did so rent free, but not in derogation of the others' interests in

the property. The occupant had the responsibility to pay the taxes on the property and generally maintain the premises.

After Amy Prothero died, the house and farm properties were occupied and used by Raymond until his death in 1961, then by David until his death in 1966. During David's occupancy, he failed to pay some of the property taxes that accrued. After David's death, Lewis occupied and used the farm properties and paid taxes on them. He left the home unoccupied and unrepaired, although he may have used it for storage.

In May of 1967, the Paragonah property was put up for sale by the county to satisfy David's unpaid taxes. Lewis discovered this before the sale and tried to pay the taxes, but was persuaded by the tax assessor to simply wait and buy the property at the sale. Without informing the other family members of his plans, Lewis bought the property at the tax sale for $55.01. The grantees listed on the tax deeds were Lewis Prothero and his wife Alene as joint tenants. The deeds were duly recorded.

For several years after his purchase of the property, Lewis did not tell the other family members of the purchase or assert his exclusive ownership of the property. Then, in 1976, while Mary was visiting Paragonah during the Memorial Day holiday, Lewis told her that he claimed title to the property. Mary could hardly believe this news, for the family members had previously placed much confidence in each other. Lewis' claim became clear to her, however, during the Memorial Day weekend of 1977, when Lewis saw her visiting the family home and warned her to leave and never come back or he would "have the Sheriff on her."

Shortly after this incident, Mary brought this lawsuit against Lewis and Alene, seeking to quiet title to the Paragonah property in the names of the surviving cotenants (including Lewis). The district court ruled that (1) as a cotenant, Lewis purchased at the tax sale for the benefit of all the surviving cotenants and thus he took no greater title than before; (2) likewise, Alene, his

wife, did not obtain good title as against the surviving cotenants; (3) the quiet title action was not barred by Utah's statute of limitations for tax titles, U.C.A., 1953, §§ 78–12–5.1, –5.2, (4) Lewis did not oust the other cotenants by adverse possession; and (5) Lewis and Alene Prothero own, as joint tenants with right of survivorship, an undivided one-fourth interest in the Paragonah property, as tenants in common with Mary Prothero, Evelyn Prothero, and the heirs of Rex Prothero.

On appeal, defendants challenge the first four of the above rulings.

## I.

■ The issue whether Lewis' title under the tax deed was held for and on behalf of all surviving cotenants is controlled by *McCready v. Fredericksen,* 41 Utah 388, 126 P. 316 (1912). In *McCready,* the Court ruled that if land is owned by tenants in common or joint tenants, and is sold for the nonpayment of taxes, then a cotenant cannot purchase a title at the tax sale which is paramount to that of his fellow cotenants or that dissolves the cotenancy. We cited with approval H. Black, *A Treatise on the Law of Tax Titles* § 282 (2d ed. 1893), which states that "[the purchasing cotenant's] payment is regarded as simply discharging the assessment, and it will inure to the benefit of all." *McCready, supra,* 41 Utah at 394, 126 P. at 318. In other words, the purchaser acquires no greater interest than he held before, although he does have a claim on the others for reimbursement according to their respective shares. *Id. See also Sperry v. Tolley,* 114 Utah 303, 199 P.2d 542 (1948); 4 G. Thompson, *Real Property* § 1803 (1979 rev. ed.).

■ In support of this rule, the Court reasoned that all cotenants owe a duty to pay taxes, and that one cotenant should not be allowed to gain an advantage over the other cotenants by neglecting this duty. The Court also noted that the principle is in keeping with the good faith which should accompany a cotenancy relationship. *McCready, supra,* 41 Utah at 394, 126 P. at

318. However, the holding of the case was limited to cases in which taxes are assessed against the property as a whole.[1]

In light of *McCready,* we affirm the district court's ruling that when Lewis purchased at the tax sale, he did so for the benefit of the other cotenants, and took no greater title to the Paragonah property than before. Lewis does, however, have a claim against the others for reimbursement of their respective shares of the $55.01 he paid at the tax sale.

## II.

In challenging the district court's second ruling, defendants point out that Alene, Lewis' wife, was not a cotenant like Lewis, and assert that her purchase at the tax sale is therefore not subject to the *McCready* rule.

■ Where a cotenant who purchases at a tax sale cannot take any greater title than his fellow cotenants, then neither can the cotenant's spouse obtain good title against the other cotenants by purchasing at the sale. *Rothwell v. Dewees,* 67 U.S. (2 Black) 613, 17 L.Ed. 309 (1862); *Beers v. Pusey,* 389 Pa. 117, 132 A.2d 346 (1957); 4 G. Thompson, *Real Property* § 1803 at 182 (1979 rev. ed.). *See also Monte v. Montalbano,* 274 Ala. 6, 145 So.2d 197 (1962); *Woolfolk v. Davis,* 225 Ark. 722, 285 S.W.2d 321 (1955). To hold otherwise would in effect allow the cotenant to circumvent the *McCready* rule by having his spouse purchase in his stead. The argument that Alene's title is valid, even if Lewis' is not, is not supported by the law.

## III.

■ Utah's statutes of limitation for tax titles are U.C.A., 1953, §§ 78–12–5.1, –5.2. Section 78–12–5.1 reads in relevant part: [W]ith respect to actions to quiet title ... no such action ... shall be commenced or interposed more than four years after the date of the tax deed ...

unless the person commencing ... such action ... has actually occupied or been in possession of such property within four years prior to the commencement ... of such action ....

Section 78–12–5.2 is substantially the same.

As we have recently stated, these sections were enacted to give greater stability to tax titles. *Fredericksen v. LaFleur,* Utah, 632 P.2d 827 (1981). Without this stability, title insurance for tax titles can be very costly or completely unobtainable, and the marketability of tax titles would be diminished. Lear, *Utah's Short Statutes of Limitation for Tax Titles: The Continuing Specter of Lyman v. National Mortgage Bond Corp.—A Need for Remedial Legislation,* 1976 B.Y.U.L.Rev. 457, 458. Notwithstanding the strong policy considerations which support these sections, however, we have refused to apply their provisions in certain cases. For example, in *Dillman v. Foster,* Utah, 656 P.2d 974 (1982), we held that if a landowner fails to pay his property tax and then conveys away his property, he should not be afforded the protection of the limitations statutes when he later repurchases the property at a tax sale and attempts to raise the tax deed against the successor to his own grantee.

In the present case, defendants should also not be afforded the protection of §§ 78–12–5.1 and 78–12–5.2. As discussed in Part I, a cotenant's purchase at a tax sale is for the benefit of all the other cotenants, and he has the same title after the tax sale as before, i.e., title as tenant in common or joint tenant. The cotenant does not purchase a "tax title" in the ordinary sense; thus, the tax title statute of limitations does not apply. *Boatman v. Beard,* Okl., 426 P.2d 349, 354 (1967); *Vesper v. Woolsey,* 231 Ark. 782, 788, 332 S.W.2d 602, 606 (1960). *See also Bevan v. Shelton,* Okl., 469 P.2d 245 (1970). To hold otherwise would create the anomaly that a cotenant in possession could buy the property at a tax sale

---

1. Where each cotenant's interest is assessed separately and one cotenant fails to pay his share, another cotenant can acquire the first cotenant's interest by purchasing at the tax sale. *McCready v. Frederickson, supra,* 41 Utah 388, 394, 126 P. 316, 318. *See also Jennings v. Bradfield,* 169 Colo. 146, 454 P.2d 81 (1969).

and, by what amounts to fraudulent conduct, avoid the *McCready* doctrine by concealing the purchase for four years, and thereby dispossess all other cotenants by virtue of the statute of limitations. That result would hardly be consistent with the proposition stated in *Dillman v. Foster, supra,* which held that "[o]ne who is under an obligation to pay taxes on land cannot be allowed to strengthen his title to such land by buying in the tax title when the property is sold as a consequence of his omission to pay taxes." *Id.* at 979.

## IV.

█ In attacking the district court's ruling that they failed to prove adverse possession, defendants rely on U.C.A., 1953, §§ 78–12–7.1,–12.1 which establish adverse possession requirements for "owners" and "holders" of tax titles.[2] As just discussed, reliance on these sections is misplaced, for defendants are not "owners" or "holders" under a tax title in the ordinary sense.[3] Nevertheless, defendants are entitled to rely on the general "adverse possession" statutes, which establish a limitations period of seven years. § 78–12–7.1.

In land disputes between cotenants, several Utah cases have established the requirements for proving adverse possession against other cotenants. *See Olwell v. Clark,* Utah, 658 P.2d 585 (1982). Again, *McCready* is the root case. There we said that before the adverse possession by one tenant in common against another can begin, the one in possession must, either by speech or by acts of "the most open and notorious character," clearly show that his possession is intended to exclude the rights of the other cotenants. *McCready, supra,* 41 Utah at 398, 126 P. at 320, quoting *Elder v. McClaskey,* 70 F. 529, 542 (6th Cir.1895). "He must, in the language of the authorities, 'bring it home' to his cotenant." *Id.*

█ To do this, however, the cotenant's acts must be more than simple acts of possession and maintenance, which ordinarily are allowed and expected in the cotenancy relationship. Thus, we have held that paying property taxes, making improvements on the property, fencing the land, and farming the land are not acts sufficiently adverse between cotenants to constitute adverse possession. *Beckstrom v. Beckstrom,* Utah, 578 P.2d 520 (1978); *Holbrook v. Carter,* 19 Utah 2d 288, 431 P.2d 123 (1967); *Heiselt v. Heiselt,* 10 Utah 2d 126, 130, 349 P.2d 175, 177–178 (1960). Neither does a lapse of time prove adverse possession or ouster, especially where the cotenants are close relatives who would usually repose confidence in the occupying cotenant and naturally be reluctant to sue him until forced to do so. *See Walker v. Walker,* 17 Utah 2d 53, 57, 404 P.2d 253, 257 (1965) (where cotenants were relatives, a lapse of 40 years was found insufficient to constitute adverse possession); *Rasmussen v. Sevier Valley Canal Co.,* 48 Utah 490, 160 P. 444 (1916) (14 year lapse insufficient to oust related cotenants). To establish adverse possession, the words or acts must be openly direct and hostile to the cotenancy relationship. *See, e.g., Sperry v. Tolley,* 114 Utah

2. Section 78–12–7.1 states in pertinent part: Provided, however, that if in any action any party shall establish prima facie evidence that he is *the owner* of any real property *under a tax title* held by him and his predecessors for four years prior to the commencement of such action and one year after the effective date of this amendment he shall be presumed to be the owner of such property by adverse possession unless it appears that the owner of the legal title or his predecessor has actually occupied or been in possession of such property under such title or that such tax title owner and his predecessors have failed to pay all the taxes levied or assessed upon such property within such four-year period.
Section 78-12–12.1 states in pertinent part:

Provided, however, that payment by the *holder of a tax title* to real property or his predecessors, of all the taxes levied and assessed upon such real property after the delinquent tax sale or transfer under which he claims for a period of not less than four years and for not less than one year after the effective date of this amendment, shall be sufficient to satisfy the requirements of this section in regard to the payment of taxes necessary to establish adverse possession.

3. Defendants assert that they were "prima facie" owners as contemplated by these sections. But the effect of *McCready* is to negate such "ownership" as between cotenants under these facts.

303, 199 P.2d 542 (1948) (advertisement for sale of property was sufficient to put other cotenants on notice of adverse possession).

■ In this case, the district court's findings show that it was not until 1976 that Lewis "brought home" to Mary his adverse possession. For several years after purchasing the Paragonah property, Lewis only farmed the land and paid taxes on it. In May of 1974 Mary requested that they fix up the family home together. Lewis' response was essentially, "Not right at this time." This was, at best, an equivocal act of exclusion. Then, in May of 1976 Lewis told Mary that he had purchased the property at a tax sale and that it was his alone. In August of 1977, this suit was brought. On these facts Lewis did not adversely possess the property under either the general seven-year or the special four-year requirement of § 78–12–7.1.

In affirming the first four district court rulings, we also necessarily affirm the fifth: that Lewis and Alene Prothero own, as joint tenants, an undivided one-fourth interest in the Paragonah property as tenants in common with the other heirs. At best Alene has a joint interest in Lewis' pro rata share as a cotenant.

Affirmed. Costs to respondent.

HALL, C.J., and OAKS, HOWE and DURHAM, JJ., concur.