SWEENEY LAND COMPANY, Plaintiff
and Counter-claim Defendant,

v.

Gilbert KIMBALL and Maud Kimball,
Melvin Fletcher, and Peggy Fletcher,
Defendants and Counter-claim Plain-
tiffs.

Gilbert KIMBALL and Maud Kimball,
Plaintiffs, Cross-claim Defendants,
and Respondents,

v.

Melvin FLETCHER and Peggy Fletcher,
Defendants, Cross-claim Plaintiffs,
and Petitioners.

No. 880485.

Supreme Court of Utah.

Feb. 9, 1990.

Gerald H. Kinghorn, Salt Lake City, for
the Fletchers.

Robert Felton, Salt Lake City, for the
Kimballs.

Paul D. Veasy, Salt Lake City, for Swee-
ney Land Co.

On Certiorari to the Utah
Court of Appeals

DURHAM, Justice:

This case involves conflicting claims to
property located in Park City. The trial
court ruled that petitioners were entitled to
a cotenant interest in the property. The
Court of Appeals overturned this judgment
and quieted title to the property in respon-
dents Gilbert and Maud Kimball under the
principles of estoppel and laches. We re-
verse and reinstate the ruling of the trial
court with respect to petitioners' cotenant
interest.

Petitioners claim that the Court of Ap-
peals (1) misapplied the standard of review
for findings of fact by a trial court, (2)
wrongly applied the doctrines of estoppel
and laches to the cotenant interests in-
volved in this case, and (3) erred in constru-
ing the prescriptive easement claim
brought by petitioners. The first claim—

that the Court of Appeals wrongly substituted its view of the facts for the trial court's findings of fact—must logically be resolved before outlining the facts of this case. The standard of review for considering on appeal the findings of fact of a trial court is well defined. Rule 52(a) of the Utah Rules of Civil Procedure provides:

> In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon, and judgment shall be entered pursuant to Rule 58A.... Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

Utah R.Civ.P. 52(a). In construing this rule, we have made it clear that "we do not set aside the trial court's factual findings unless they are against the clear weight of the evidence or we otherwise reach a definite and firm conviction that a mistake has been made." *Western Kane County Special Serv. Dist. No. 1 v. Jackson Cattle Co.*, 744 P.2d 1376, 1377 (Utah 1987) (citing *State v. Walker*, 743 P.2d 191 (Utah 1987)). This standard of review applies equally to the Court of Appeals.

The Court of Appeals relied heavily on the testimony of respondent Maud Kimball in holding that petitioners were not entitled to an interest in the land under the principles of estoppel and laches. Maud testified about alleged statements made by Robert Kimball, the brother and original cotenant of her husband Gilbert Kimball. The alleged statements concerned Robert's desire to have nothing more to do with the property.

Inconsistencies between Maud's pretrial deposition and her testimony at trial brought her credibility as a witness into question. The trial judge chose not to rely on Maud's testimony in making his findings of fact, apparently because of his determination that she lacked credibility. The Court of Appeals incorrectly relied on her questionable testimony in overturning the trial court.[1] The trial court's determination regarding Maud's credibility was exactly the type of determination that rule 52(a) is meant to protect on appeal. Determinations about credibility have a necessary and important impact on a trial court judge's findings of fact. There is no reason to question the trial court judge's determinations regarding the reliability of Maud's testimony, and there is no evidence showing that the trial judge's findings of fact were erroneous. Therefore, we regard, as the Court of Appeals should have regarded, the trial judge's findings of fact as accurate.

In 1940, Robert Kimball and Gilbert Kimball purchased land in Park City known as the Hershiser–Kimball parcel from Summit County. The two brothers were business partners in a service station and garage located on part of the land. Robert Kimball left Park City in 1940 and never resided there again. He did not transfer any of his interest in the land, and when he died in 1975, his cotenant interest in the property passed to his wife, Elizabeth Kimball, under a residuary clause in his will. In 1976, Gilbert and Maud Kimball created a joint tenancy between themselves as to Gilbert's original cotenant interest in the property. The quitclaim deed creating the joint tenancy refers to the original deed of the land to Gilbert and Robert Kimball as cotenants. In 1983, petitioners Melvin and Peggy

---

1. The Court of Appeals also cited a statement made by Gilbert Kimball before his death regarding his brother's lack of interest in the property and a statement testified to by Gary Kimball, Gilbert and Maud's son, to the same effect. Our analysis of the required deference to the trial court's findings of fact applies equally to the trial court's decision not to incorporate this evidence into its findings. Even if these statements, along with Maud's testimony, were considered findings, however, they would not necessarily affect the outcome of this case. As we discuss later in this decision, the important question here is whether the cotenant attempting to adversely possess another cotenant provided the requisite notice of that intent. These statements were irrelevant to this question because they were allegedly made by Robert Kimball, the cotenant who stood to lose his interest, not by Gilbert or Maud Kimball, the parties attempting to adversely possess that interest.

Fletcher received a quitclaim deed from Elizabeth for her interest in the Hershiser–Kimball property.

Gilbert and Maud paid property taxes on the Hershiser–Kimball property from 1942 through 1983 in the amount of $4,641.66. This amount included money paid by Gilbert Kimball in 1947 to redeem the property prior to a tax sale by paying taxes which were delinquent between 1942 and 1947. In February 1984, the Fletchers paid the sum of $2,320.83 to the clerk of the trial court, representing half of the property taxes due between 1942 and 1983.

■ Petitioners argue that the Court of Appeals erred in analyzing this case under the principles of estoppel and laches and that the trial court's analysis under the doctrine of adverse possession was accurate. We agree. The principles of estoppel and laches are not applicable in this case. The Court of Appeals, when applying these doctrines, looked primarily at the inaction of Robert Kimball, the cotenant who stood to lose his interest in the property. By contrast, we analyze the case, as the trial court did, under the doctrine of adverse possession; this analysis focuses on the behavior of the cotenants who are attempting to acquire an added interest in the property, in this case Gilbert and Maud Kimball.

Gilbert and Maud assert that they adversely possessed Robert Kimball's cotenant interest in the property through payment of the taxes on the property and the redemption of the property in 1947 prior to a tax sale. The trial court found that there was no evidence that respondents "ever provided notice of any kind to Robert W. Kimball or his successors to the effect that [they] intended to adversely possess the [Hershiser–Kimball] parcel as against Robert W. Kimball." Relying on this finding, the trial court held that the Fletchers acquired a valid cotenant interest in the land by acquiring a quitclaim deed from Elizabeth, Robert Kimball's successor in interest. The Court of Appeals overturned this holding by relying on findings of fact inconsistent with the trial court's findings of fact. We reinstate the trial court's ruling regarding the cotenancy interest.

Utah law regarding adverse possession between cotenants is well settled. The standards for determining when a cotenant has successfully been adversely possessed were formulated in *McCready v. Fredericksen*, 41 Utah 388, 126 P. 316 (1912). In *Olwell v. Clark*, 658 P.2d 585 (Utah 1982), this Court summarized the *McCready* standards governing adverse possession between cotenants and the uniqueness of the cotenant relationship:

> [T]he cotenancy relationship [gives] rise to two presumptions: first, possession and use by one cotenant is presumed to be possession and use by all cotenants, and second, any act calculated to protect the property against a lien or sale, or otherwise, will be presumed to be for the benefit of all cotenants unless the contrary is clearly made to appear....
>
> [T]he [*McCready*] Court ... held that in order for a party to adversely possess property against his cotenant, the cotenancy must be disavowed "by acts of the most open and notorious character" which show clearly to the whole world the claimant's intention to exclude the rights of his cotenant.

*Id.* at 588 (quoting *Elder v. McClaskey*, 70 F. 529, 542 (6th Cir.1895)). *McCready* held that a cotenant's payment of taxes and purchase of a tax deed were for the benefit of all cotenants. These actions did not result in adverse possession, but only gave the paying/purchasing cotenant a right to contribution. *McCready*, 41 Utah at 399–401, 126 P. at 320–21.

■ This Court has followed the standards adopted in *McCready* in many subsequent cases. Recognizing the special relationship that exists between cotenants, we have held that the purchase of land at a tax sale by one cotenant does not dispossess the other cotenant of his or her rights. *Massey v. Prothero*, 664 P.2d 1176 (Utah 1983). We have also held that a cotenant's purchase of land at a sale resulting from the purchasing cotenant's own default on a debt secured by the land does not deprive other cotenants of any rights to the land.

*Jolley v. Corry,* 671 P.2d 139 (Utah 1983). Several cases have emphasized the principle established in *McCready* that actions of a cotenant to protect the property are presumed to be for the benefit of all cotenants. *Beckstrom v. Beckstrom,* 578 P.2d 520, 522 (Utah 1978); *Heiselt v. Heiselt,* 10 Utah 2d 126, 130, 349 P.2d 175, 178 (1960); *Sperry v. Tolley,* 114 Utah 303, 312, 199 P.2d 542, 546 (1948). This presumption is especially strong when the cotenants are relatives. *See Walker v. Walker,* 17 Utah 2d 53, 57–58, 404 P.2d 253, 256 (1965) (one related cotenant's holding and protection of property for forty years did not constitute adverse possession against other related cotenants).

*Olwell v. Clark,* 658 P.2d 585, a case similar to this one, involved a claim by a cotenant that his payment of property taxes caused the statute of limitations for adverse possession to begin running. We held that the cotenant's payment of taxes and attempts to preserve title were for the benefit of all cotenants and therefore did not constitute notice of adverse possession and did not start the statute of limitations running. In *Olwell,* we also reiterated that an adverse possession claimant's "conduct must give notice of his claim to his cotenant in some clear and unequivocal manner." *Olwell,* 658 P.2d at 589.

In this case, respondents Gilbert and Maud paid taxes on the property and redeemed the property prior to a tax sale. Applying the standards established in *McCready* and followed in cases like *Olwell,* we conclude that these actions did not constitute notice to the other cotenant, Robert Kimball, or to his surviving wife Elizabeth that Gilbert and Maud intended to adversely possess the property. Respondents' payment of taxes and redemption prior to a tax sale were for the benefit of all cotenants and did not trigger a claim of adverse possession. Of course, respondents are entitled to contribution for payments made to protect the property.

The final question raised in this case is whether the Court of Appeals correctly treated petitioners' alternative claim that they acquired rights in the property by prescriptive easement. Because we hold that they acquired a valid cotenant interest in the property by taking a quitclaim deed from Elizabeth Kimball, Robert Kimball's successor in interest, we need not address this issue.

We reverse the Court of Appeals and vacate its unpublished opinion. We reinstate the trial court's ruling as to petitioners' cotenant interest. The Court of Appeals noted, as we do, the confusion in the record regarding the trial court's ruling on the Sweeney Land Company's property rights. The judgment and decree of quiet title, which were signed by the trial judge, do not comport with the judge's oral ruling as to the Sweeney interest. Because of this confusion at the trial court level and the absence of any information presented to this Court on this issue, we remand the case to the trial court for clarification on the discrepancy between the oral ruling and the judgment and decree of quiet title.

HALL, C.J., HOWE, Associate C.J., and STEWART and ZIMMERMAN, JJ., concur.