RASMUSSEN v. SEVIER VALLEY CANAL CO. et al.

No. 2891.   Decided October 5, 1916.   (160 Pac. 444.)

1. CORPORATIONS—STOCK—PRESUMPTIONS  It will be presumed that corporate stock registered in the name of deceased belonged to him and descended to his heirs, there being no evidence that defendant who claimed the stock exercised any dominion over it until after the death of deceased.   (Page 493.)

2. TENANCY IN COMMON—ADVERSE POSSESSION—WHAT CONSTITUTES. The owner of stock in an irrigation company died, and it descended to his children equally, the children becoming tenants in common.  After the death of the owner, defendant, one of the children, exclusively used the water represented by the stock, paid assessments, and voted the stock, having it transferred on the books of the company to his own name shortly after the death of the original owner.  About one year before commencement of the action, a certificate for the stock was issued to defendant.  Held that, as defendant was a tenant in common with the other children, and that his possession must be regarded as the possession and for the benefit of all until he unequivocally repudiated the interests of his cotenants, defendant's voting of the stock, transfer of it to his name, together with exclusive use of the water, etc., did not operate as an ouster and repudiation, so that limitations began to run in defendant's favor.[1]   (Page 493.)

Appeal from District Court, Sixth District; *Hon. A. H. Christensen*, Judge.

Action by A. P. Rasmussen, as administrator of the estate of Hans C. H. Ramlose, against the Sevier Valley Canal Company and Holger W. Ramlose.

Judgment for defendants.   Plaintiff appeals.

[1]*McCready* v. *Frederickson*, 41 Utah 388, 126 Pac. 316; *Hatch* v. *Hatch*, 46 Utah 218, 148 Pac. 1096.

REVERSED, and remanded.

*W. I. Snyder,* for appellant.

*E. E. Hoffman* and *John F. Chidester,* for respondents.

STRAUP, C. J.

The plaintiff claimed that his intestate was the owner of 102.97 shares of the capital stock of the defendant, the Sevier Valley Canal Company, and to recover them brought this action against the company and the defendant Holger W. Ramlose, who also claims to be the owner of the stock. The defendants also pleaded the statute of limitations and an estoppel. The court found:

"That at the time of the death of said Hans C. H. Ramlose there stood in his name on the books of the Sevier Valley Canal Company, a corporation, 102.97 shares of the capital stock of said company.

"That after the death of said Hans C. H. Ramlose and prior to the year 1904, without the knowledge and consent of the administrator of the said estate or any person authorized to act for said estate, the defendant Holger W. Ramlose procured J. M. Lauritzen, who was then secretary of the defendant Sevier Valley Canal Company, to transfer the said stock from the name of Hans C. H. Ramlose to that of the defendant Holger W. Ramlose, and that later, on the 18th day of February, 1908, the defendant corporation, by its secretary, upon the request of Holger W. Ramlose, issued and delivered to the defendant Holger W. Ramlose a certificate for the said 102.97 shares of stock in his own name.

"That the said Holger W. Ramlose has, for about fifteen years next preceding the commencement of this action, under a claim of right so to do, and under a claim of ownership of the same, paid the taxes and assessments levied against the stock in said complaint mentioned, which assessments amounted to more than the par value of the said stock; has voted the same at all stockholders' meetings without objection from the plaintiff, the said Hans C. H. Ramlose, during his lifetime or his heirs, executors, or administrators after his death; has

used the water distributed to said stock during said period without objection from the said Hans C. H. Ramlose, his heirs, executors, or administrators.

"That the said acts of said Holger W. Ramlose were known to the plaintiff and to the heirs, executors, and administrators of the said Hans C. H. Ramlose and to the said Hans C. H. Ramlose during his lifetime, and said acts and the possession of the said stock were open, notorious, exclusive, peaceable, uninterrupted under a claim of right and ownership of the title to said stock, and were adverse to any person or persons whatsoever during the whole of said fifteen years.

"That the defendant Sevier Valley Canal Company does not issue certificates of stock unless requested so to do, and the said Holger W. Ramlose was permitted to vote said stock, use said water, and to do the act aforesaid and represent said stock in stockholders' meetings, and paid the assessments thereon during the lifetime of the said Hans C. H. Ramlose, and has continued to represent said stock and handle the same as his own during all the times mentioned in the amended complaint of the plaintiff and the answer of the defendant to the same, and still continues to hold said stock as his own."

On these findings the court held that under Comp. Laws 1907, Sections 2877-2890, the action was barred, and decreed Holger W. Ramlose the owner of the stock. The plaintiff appeals.

He urges that the findings are not supported by the evidence. We find no evidence to support the finding that Holger W. Ramlose, at any time during the lifetime of the deceased, paid any taxes or assessments on the stock, or used any of the water represented by it, or voted the stock, or otherwise exercised any control or dominion over it. But the finding that he did all that after the death of the deceased, and for a period of about eleven years before this action was commenced against the company, about fourteen years before Holger was made a party to the action, and for more than five years after an administrator was appointed and before any action was commenced is supported by the evidence. Whether Holger's possession of the stock was hostile and adverse is the determinative factor.

The company was organized in 1887. Until 1901, although doing business, distributing water for its stockholders, it had not issued any certificates of stock, and thereafter but a few to those requesting them. The stockholders, however, were indicated on its books, together with the number of shares that each was entitled to. It was the custom of the company, on written or mere oral orders, to transfer on its books stock from one person to another. The deceased died in 1898, and left surviving him as his heirs, two sons and three daughters residing in St. Louis, Mo., the defendant Holger W. Ramlose, also a son and a daughter residing at Richfield, Utah, where the deceased resided, a daughter residing at Levan, Utah, and unknown heirs of a deceased son, residing in Australia.

As found by the court, the shares of stock in dispute, on the books of the company, stood in the name of the deceased at the time of his death. Holger claimed that his father, shortly before his death, gave him a written order for a transfer of the stock on the books from the name of the deceased to Holger, and that Holger, after the deceased's death, presented the order to a Mr. Baker, the then secretary of the company. But no proof was made to support such claim. It may be that Holger was unfortunate in such respect, for, under the statute (Comp. Laws 1907, Section 3413), he was disqualified from testifying on such subject, the order relating to a transaction had with the deceased or to a fact equally within the deceased's knowledge, and because of Baker's death long prior to the trial. It was not shown, either by the books or otherwise, that any transfer of the stock was then made or entered on the company's books. To the contrary it was shown that the entry was made by a subsequent secretary between the years 1902 and 1904, that secretary testifying that it was made "early during my term of office," which began in 1902. The secretary making it, on appellant's objection, was not allowed to testify how he came to make the entry.

The court found that Holger, without the knowledge or consent of the administrator, procured the then secretary to make it. But there is nothing to support that. In **1, 2** February, 1908, the company, who recognized Holger as the owner of the stock issued and delivered a certificate

thereof to him. That was the first certificate that had been issued for that stock. That was a little more than a year before this action was commenced against the company. Thus, upon the evidence and the record, the stock, when the deceased died, stood in his name on the company's books. Presumptively it then was his stock. This presumption is not overthrown, for it is not made to appear that Holger, during the lifetime of the deceased, exercised any control or dominion whatever over the stock, or used any of the water represented by it, or that the deceased had transferred the stock to him. Hence, on the record, the deceased must be regarded as the owner of the stock at the time of his death. It thus descended to his heirs, his children, in equal shares, who, with respect to it, became tenants in common. But after the deceased's death Holger took possession of it, paid all the taxes and assessments, voted the stock, and exclusively used the water represented by it, and in such respect exercised dominion and ownership over it. However, being a tenant in common with the other heirs, Holger's possession and management must be regarded as the possession and for the benefit of all the tenants, until he, by some act or declaration, repudiated the interests of his cotenants. To repudiate such interest it, of course, was not necessary that Holger should have given actual notice of ouster or disseisin. A hostile claim of exclusive right to the whole of the property and a repudiation of the interest of his cotenants may be shown by acts and conduct. Except as to one of the cotenants there is no evidence of any express notice of ouster or repudiation. If at all, notice of ouster or repudiation must be inferred from the shown facts that after the death of the deceased, and for eleven years prior to the commencement of the action against the company and fourteen years prior to the time Holger was made a party defendant, Holger had the exclusive use of the water, paid all the taxes and assessments on the stock, voted it at stockholders' meetings, and in so doing was recognized by the company as the owner. We do not think that is sufficient to establish an outster and repudiation by one cotenant against other cotenants. *McCready* v. *Fredericksen,* 41 Utah 388, 126 Pac. 316; *Hatch* v. *Hatch,* 46 Utah 218, 148 Pac. 1096; 38 Cyc. 18 to 27; *Aguirre* v. *Alex-*

*ander,* 58 Cal. 23; *Peabody* v. *Burri,* 255 Ill. 592, 99 N. E. 690; *Klumpke* v. *Henley,* 24 Cal. App. 35, 140 Pac. 289, 313; *Klumpke* v. *Moreno et al.,* 24 Cal. App. 35, 140 Pac. 313.

The possession, though exclusive, yet was not so overt, hostile and adverse as to constitute notice in itself of ouster or repudiation. The case of *Mathews* v. *Baker,* 47 Utah 532, 155 Pac. 427, in which we held an ouster and repudiation shown, does not make against this. That case and the one in hand are dissimilar in facts. Since on the theory of an ouster and repudiation, and on no other ground, Holger W. Ramlose was adjudged the owner of the stock, it follows that the judgment must be reversed, and the case remanded for a new trial. Such is the order. Costs to the appellant.

McCARTY, J., concurs.

FRICK, J. (concurring).

The question regarding the statute of limitations, to my mind, is not entirely free from doubt. While the respondent Holger W. Ramlose had exclusive possession and control of the stock in question for fourteen years prior to the time he was made a party to the action, and while during all of that time he apparently exercised the same dominion and made the same use thereof as any owner of similar property usually does, yet it is beyond dispute that during all of that time he was also a tenant in common with his brothers and sisters of the stock in question. All of his acts of dominion and control may therefore have been those of a tenant in common rather than that of an absolute owner. His possession, under the circumstances disclosed by the evidence, is presumed to be that of tenant in common, and until that presumption is overcome by sufficient direct or inferential evidence, it must prevail. The evidence respecting exclusive ownership is merely inferential, and, in view that inferences may be deduced both for and against exclusive ownership I am not able to say that the presumption has been overcome. I, therefore, yield my judgment to that of my Associates. I have less hesitancy in arriving at this conclusion for the reason that in case Holger W. Ramlose has paid assessments, taxes, etc., to preserve the stock

in excess of the value of its use, he may, as between himself and his cotenants, as pointed out in *McCready* v. *Fredericksen, supra,* be reimbursed therefor.   Upon the other hand, if we should err in giving him exclusive title, his cotenants would be without any redress whatever.