Lloyd K. ASH and Linda R. Ash, his wife, Plaintiffs and Respondents,

v.

STATE of Utah and First American Title Insurance Company, a California Corporation, Defendants.

FIRST AMERICAN TITLE INSURANCE COMPANY, a California Corporation, Cross Complainant,

v.

STATE of Utah, Cross Defendant.

STATE of Utah, Defendant, Third-Party Plaintiff and Appellant,

v.

William Grant FIDLER and Mayza C. Fidler, his wife, Third-Party Defendants.

William Grant FIDLER and Mayza C. Fidler, his wife, Third-Party Plaintiffs,

v.

The BANK OF PLEASANT GROVE, Third-Party Defendant.

No. 14919.

Supreme Court of Utah.

Dec. 13, 1977.

---

**3.** *In re Adoption of F.*, 26 Utah 2d 255, 259–260, 488 P.2d 130 (1971).

**4.** Note 2, supra, 24 Utah 2d at p. 61, 465 P.2d at p. 542.

**1376**

Vernon B. Romney, Atty. Gen., Donald S. Coleman, Asst. Atty. Gen., Salt Lake City, for defendant, third party plaintiff and appellant.

Carman E. Kipp of Kipp & Christian, Richard Calder of Edwards & Plumb, Harry D. Pugsley of Watkiss & Campbell, Earl Jay Peck, Salt Lake City, for plaintiffs and respondents.

MAUGHAN, Justice:

Plaintiffs, as fee owners, initiated a quiet title action against the state to a described parcel of land. Specifically, plaintiffs alleged the state asserted a right adverse to plaintiffs' fee title ownership in the westerly 40 feet of their parcel and that the state's claim was wrongly asserted. The state responded that the area in dispute had been taken ·in an eminent domain proceeding from plaintiffs' grantors, the Fidlers. Upon trial to the court, the title to the property as described in the conveyance to plaintiffs was quieted in them. The state appeals. We affirm. Costs awarded to plaintiffs. All statutory references are to U.C.A.1953.

An action to quiet title is an action at law where the pleadings put in issue the ownership and possession of real property.[1] In such an action, the plaintiff must succeed by virtue of the strength of his own title rather than the weakness of defendant's title; nevertheless all the plaintiff need do is to prove prima facie that he has title, which if not overcome by defendant, is sufficient.[2] Since this is an action at law, upon review, the findings and judgment of the trial court will be presumed valid, and the record will be reviewed in a light favorable to them. The appellant is required to sustain the burden of proving error, and the judgment of the trial court will not be disturbed if there be substantial evidence in the record to support it.[3]

In 1963, the state filed a condemnation action against Fidlers (plaintiffs' predecessors in interest). In 1966, a final order of condemnation was entered and recorded. The condemnation proceeding was supposed to take, in fee simple, a strip of Fidlers' tract sufficient to enlarge 5th East in American Fork, Utah; from 66 feet to 120 feet. After the condemnation judgment was recorded, the county prepared a new description for tax purposes and a new plat was prepared. On April 1973, Fidlers conveyed by special warranty deed the land to plaintiffs. A policy of title insurance was issued. The description was based on the Utah County tax records and the plat map in the recorder's office.

The trial court found the state to have used a false starting point in the description of the property. And, in addition, the state so erred in the description of the property it could not reasonably advise plaintiffs, their grantors, or the public of the subject matter of the condemnation proceedings; as it pertained to the land involved in the instant action. The trial court found plaintiffs acted with reasonable care throughout the

1. *Babcock v. Dangerfield*, 98 Utah 10, 94 P.2d 862 (1939); *Holland v. Wilson*, 8 Utah 2d 11, 327 P.2d 250 (1958).

2. *Babcock v. Dangerfield*, note 1, supra, 98 Utah at pp. 12–13, 94 P.2d 862.

3. *R. C. Tolman Construction Company, Inc. v. Myton Water Association*, Utah, 563 P.2d 780, 782 (1977).

transaction, which resulted in their purchase of the property. Also, the transfer was supported by the files and records of the Utah County Recorder's office, and by a policy of title insurance issued in their favor. The trial court ruled the state had no right to the real property described in plaintiffs' complaint.

Prior to the condemnation of Fidlers' property, the western boundary was on the easterly line of 5th East. The northern boundary ran at an angle southeasterly along the south boundary of Highway 91; owing to this angle the eastern boundary was 45 feet shorter than the western boundary.

The final order of condemnation described the property as follows:

A parcel of land in fee for a highway known as Project No. 001–6, being part of an entire tract of property situated in the E½ of the NW¼ of Section 24, T. 5 S., R. 1 E., S.L.M. The boundaries of said parcel of land are described as follows:

Beginning at the SW corner of said entire tract of property, which corner is 11.57 chains East from the SE corner of Block 1, Plat "A" American Fork City Survey; thence North 385 ft., more or less, along the west boundary line of said entire tract of property to the NW corner of said entire tract of property; thence S. 73° 26′ E. 72 ft., more or less, to a point 60.0 ft. perpendicularly distant easterly from the survey line of said project; thence S. 0° 49′ 19″ W. 363 ft., more or less, to the south boundary line of said entire tract of property; thence West 75 ft., more or less, along said south boundary line to the point of beginning. The above described parcel of land contains 0.64 acres, more or less.

78–34–15, provides:

. . . A copy of the judgment must be filed in the office of the recorder of the county, and thereupon the property described therein shall vest in the plaintiff for the purpose therein specified.

■ Under this statute only the property described in the final order of condemnation, which was recorded, vested in the state. Since the trial court found plaintiffs to have acted reasonably in the transaction, the state can prevail only if the judgment gave notice of record to plaintiffs.

The warranty deed to plaintiffs described the property as follows:

Commencing South 89° 29′ East 799.25 feet along line from the Southeast Corner of Block 1, Plat "A" American Fork City Survey; thence North 26′ East 8.77 feet; thence East 28.2 feet; thence North 350 feet more or less to Highway; thence South 72° 22′ East 121.75 feet; thence South 2° 27′ West 323.8 feet; thence North 89° 29′ West 135.26 feet to beginning.

On appeal, the state contends the description gave notice to plaintiffs of the state's interest in the westerly portion of the property.

The requisite degree of accuracy in a description is an eminent domain proceeding is stated as follows in 6 Nichols On Eminent Domain (3rd Ed.), Sec. 26.112, pp. 26–48.1 to 26–57:

The petition must contain an accurate description of the land sought to be taken, so that the extent of the claim will appear on the record. In the absence of an opportunity to amend the petition, failure in this respect will invalidate the proceeding. The description should be as accurate as is required in the case of a deed of land. At any rate it must be such that a surveyor could locate the parcel described without the aid of extrinsic evidence. It has been held that the land must be so exactly described as to be understood by an ordinary person who has no engineering knowledge. Accordingly, unless the whole tract taken is surrounded by natural boundaries such as streams or highways, the description must be by metes and bounds, that is, it must contain an initial point definitely situated, and courses and distances of the boundary lines (the courses either being given by the points of the compass or constituting a straight line from one fixed point to another). . . .

In *County of Orange v. Metropolitan Transportation Authority*[4] the court stated the description of the property to be acquired should be sufficiently definite to enable a surveyor to determine the starting point and plot the route, and the property should be described with that degree of accuracy that it can be readily located by anyone familiar with the locality.

The state presented the testimony of two surveyors in an attempt to prove its description was sufficient to impart notice of record to plaintiffs. Mr. Varoz surveyed the property. He testified the property claimed to be taken by the state was not described in the final judgment of condemnation. The starting point as described in the order was located in the middle of 5th East, 35 feet from the point claimed by the state. He also stated the discrepancy of the other calls, and that they failed to close. He conceded the description was confusing, and that if the state had actually surveyed the property, the erroneous description would have been discovered.

Mr. Varoz admitted he did not use the condemnation judgment to state the dimensions physically on the ground. Also that his testimony concerning the property taken from Fidler was not the property described in the condemnation order. He testified the southwest corner, which was the beginning point of the description, was not located on the ground at the time of the taking, but on the Friday prior to trial. He further stated the beginning point of 11.57 chains in the condemnation judgment was located in the middle of 5th East, and that this location explained the longer distance in the western boundary call (the northern boundary proceeds southeasterly at an angle so the farther west the western boundary is located, the greater the length the western boundary). Mr. Varoz further testified that the east line of 5th East was the west boundary line of the property. Prior to the taking, 5th East was a dedicated street with the right of way in the county.

It should be observed that an abutting owner would own a reversionary inter-est in the street to its center. When the state took the property in fee simple, it would also be expected to take this reversionary interest, which would explain the description in the judgment. This conclusion is further sustained by the fact the state did not describe the western boundary as the edge of 5th East, but merely utilized a metes and bounds description from a point located approximately in the center of the street. The location of the boundary in the middle of the street would further explain, as previously noted, the longer distance in the description of the western boundary.

> Where the description of land in the declaration of taking is by metes and bounds and does not include abutting streets, final judgment is restricted to the land described in the declaration of taking, notwithstanding a stipulation by the landowner that the judgment is also to cover abutting streets.[5]

The description in the judgment is, in fact, consistent with the interpretation made of it by the county in preparing the plat in the recorder's office and the description in the county tax assessor's office.

Mr. Varoz further testified that, in 1964, the state became aware of the error in its description, viz., that its point of beginning was in the street at a distance of approximately 35 feet west of the boundary line it needed to describe. Its method of resolving the problem was to procure a quit claim deed from Murdocks, the predecessors in interest of Fidlers. This deed described the middle of 5th East. Mr. Varoz testified the state bungled this description. There is no explanation in the record as to why the state did not amend its complaint and correct its description, since the final order of condemnation was not entered until April 18, 1966.

The state further contends that the only valid call in the condemnation judgment was the perpendicular of 60 feet from the northeast corner to the project survey line. It is urged this call was sufficient to put the

---

4. 71 Misc.2d 691, 337 N.Y.S.2d 178, 197 (1971).

5. 30 C.J.S. Eminent Domain, § 322, p. 192.

plaintiffs on notice the state was taking approximately 60 feet of the property. The call from the northwest corner to the northeast corner in the state's description was 72 feet; Mr. Varoz testified it should have been 67.5 feet. Furthermore the state's description of the angle of this course varies from the conceded description of Fidlers' property. The location of the project survey line was not recorded, and until four days prior to trial the line was not marked by any monuments. The state urges the project survey line was on the strip map served on the Fidlers; with the complaint. The state's other expert witness, a surveyor, Mr. De Mass, could not locate on the strip map any indication of the location of the easterly line of the then existing 5th East. This would be necessary, if the condemnees were to understand the relationship of the project line to the street line; and the call of 60 feet in the perpendicular. He further testified that on the strip map there was neither a tie of the southwest corner to Block 1, Plat A, American Fork Survey, nor a tie on the map from the southwest corner to the project survey line. On the strip map, no point of beginning of the southwest corner was designated.

He expressed an opinion that the state's description was sufficient in that the point of beginning was a double call, viz., 11.57 chains and the southwest corner of the entire tract of property. However, Mr. De Mass conceded that none of the corners of the property was marked by monuments, and that the southwest corner was a theoretical line. He testified the state's point of beginning was off 38 feet and not 35 feet as expressed by Mr. Varoz. He testified that the only valid call in the description was the tie of the perpendicular of 60 feet to the northeast corner; however, he conceded there was no monument at the northeast corner. He further conceded that someone looking in the county recorder's office could not find a line from which to measure the 60 feet. He further testified that the county recorder's office interpreted the point of

beginning in the state's judgment as 11.57 chains and laid out the plat accordingly.

█ Since the call of 11.57 chains was from a monument, it would control over the alternate call of the southwest corner, which was not marked by any fixed object, which could be clearly designated and accurately described.[6]

█ A survey of the record indicates substantial evidence to support the finding of the trial court, viz., the description of the property in the recorded condemnation judgment did not give plaintiffs, their grantors, or the public notice that any of the property in the conveyance to plaintiffs was condemned.

█ The state has marshalled evidence from the record, which was disputed, to prove the Fidlers did not intend to convey the property described in their conveyance to plaintiffs. The deed is clear and unambiguous. When the intention of the parties can be ascertained from the words used in the deed, there remains nothing to effectuate that intention.[7]

Finally, the state contends plaintiffs did not file a timely notice of their claim under the Governmental Immunity Act. Specifically, more than one year expired after the date of the conveyance from Fidlers to plaintiffs.

63–30–6, waives immunity from suit of all governmental entities for the possession of real property or to quiet title thereto or to determine an adverse claim thereon.

63–30–12, provides:

A claim against the state or any agency thereof as defined herein shall be forever barred unless notice thereof is filed with the attorney general of the state of Utah and the agency concerned within one year *after the cause of action arises.* [Emphasis supplied.]

█ A cause of action arises the moment an action may be maintained to enforce a legal right. The statute of limitations then begins to run.[8] In *Scott v. Han-*

6. *Achter v. Maw*, 27 Utah 2d 149, 493 P.2d 989 (1972).

7. *Achter v. Maw*, note 6, supra.

8. *Sweetser v. Fox*, 43 Utah 40, 48, 134 P. 599 (1913).

**1380**

*sen*[9] this Court stated all statutes of limitation are predicated on the proposition that the prescribed period does not begin to run against a party until a cause of action has arisen. This does not occur in an action for possession of land until the right of possession has been so challenged as to give rise to a cause of action.

Here, there is nothing in the record to indicate plaintiffs' right to possession had been disturbed or encroached upon by the state more than one year prior to the time their notice of claim was filed. From the facts set forth in the record, the statute of limitations for possession of the land had not commenced to run against plaintiffs.[10] Therefore, plaintiffs' notice of claim was not filed more than one year after their cause of action had arisen, within the provisions of 63–30–12.

ELLETT, C. J., and CROCKETT and WILKINS, JJ., concur.

HALL, J., concurs in result.

**9.** 18 Utah 2d 303, 308–309, 422 P.2d 525 (1966).

**10.** See *Viersen v. Boettcher*, Okl., 387 P.2d 133, 138 (1963); 65 Am.Jur.2d, Quieting Title, Sec. 55, p. 185: ". . . He may wait until his

possession is disturbed or his title is attacked before taking steps to vindicate his right."