Margaret Dooly OLWELL, et al.,
Plaintiffs and Respondents,

v.

Thomas A. CLARK, et al., Defendants
and Appellants.

No. 17595.

Supreme Court of Utah.

Nov. 10, 1982.

Ted Charlier, James A. Murphy, Salt Lake City, for defendants and appellants.

Clifford L. Ashton, Salt Lake City, for plaintiffs and respondents.

DURHAM, Justice:

This appeal arises from a quiet title action in the Third District Court for Summit County in which the plaintiffs-respondents, hereafter Bambergers, claimed title to an interest in property by adverse possession

against a cotenant and moved for summary judgment. The defendants-appellants, hereafter Schulders, denied the claim and opposed the motion without filing affidavits. The court granted the Bambergers' motion and the Schulders appeal.

The property in question, located in the Park City area, was originally part of some patented mining claims issued to Thomas A., Luther, and E.M. Clark who, in 1911, conveyed an undivided one-third interest to Ernest Bamberger and Russell G. Schulder, all without any words indicating joint tenancy. Russell G. Schulder died in 1926 and the interest in the property was not included in the inventory of his estate. Ernest Bamberger died in 1958 and an undivided one-sixth interest in the property was included in the Inventory and Decree of Distribution. The Bamberger interest may be traced through a series of probate proceedings to the present plaintiffs. In all instances but one, the interest is represented as an undivided one-sixth interest. The exception was a Trustee's Deed dated July 25, 1962, under a will which purported to convey an undivided interest in "all" the property. Subsequent references were made to a one-sixth interest only. The record indicates that Bamberger and his successors paid taxes on the property from at least 1938. There is no record of tax payment by any other person.

The property consists of undeveloped hilly terrain covered with scrub oak. There are no structures, cattle, or fences on the land, although there are some indications of old mine facilities. Hikers have been permitted access across the property over the years. There is apparently some knowledge in the Park City community that the Bambergers are the owners of the property.

The appellants, Schulders, raise two points on appeal. The first point asserts that genuine issues of fact were raised by the Schulders' pleadings which were not addressed by the Bambergers' proof in support of their motion for summary judgment, and that therefore, the trial court granted summary judgment erroneously. Since the parties are in substantial agreement as to the facts, and since the essential issues can be resolved as a matter of law, it is unnecessary to address this point beyond commenting that under Rule 56, Utah R.Civ.P., it is not always required that a party proffer affidavits in opposition to a motion for summary judgment in order to avoid judgment against him. The Bambergers argue that the summary judgment must be affirmed because the Schulders have not complied with Rule 56(c) and (e), having failed to file such affidavits. The rule itself sets the criteria for judgment: a party may receive the judgment requested if (a) the pleadings and affidavits, if any, show no issue as to any material fact, *and* (b) the party is entitled to judgment as a matter of law. Rule 56(e) states specifically that a response in opposition to a motion must be supported by affidavits or other documents *only* in order to demonstrate that there is a genuine issue of fact for trial. Where the party opposed to the motion submits *no documents in opposition*, the moving party may be granted summary judgment only "if appropriate," that is, if he is entitled to judgment as a matter of law. *Lockhart Co. v. Anderson*, 646 P.2d 678, 1982.

The second point raised by the Schulders on appeal asserts that the facts as proffered by the Bambergers do not, as a matter of law, entitle them to quiet title in the property by adverse possession against their cotenant, the Schulders.[1] Section 78–

---

1. Although not argued by respondents, it should be noted that the court below entered Findings of Fact purportedly dispositive of this question. The respondents' action to quiet title was initiated January 15, 1980. The Schulders were the only parties to respond. On April 21, 1981, the respondents moved for partial summary judgment to quiet title against the parties who had not answered. In the absence of any objection to the respondents' claims, the court granted judgment and entered the respondents' Findings of Fact. These Findings state, among other things, that the respondents had held the property "continuously, openly, notoriously and adversely to all persons" and that "notice of such adverse use and claim adequately has been given . . . ." Subsequently, the respondents obtained summary judgment against the

12–7, Utah Code Ann. (1953) is Utah's adverse possession statute, setting forth the proposition that possession of real property is *presumed* to be in the legal title holder and that occupancy by any other is deemed subordinate to that title unless the occupant can show that the property has been held and possessed adversely for seven years. Although the language differs slightly in the cases, it is widely recognized that in order to show successful adverse possession, the claimant must intend to acquire title, must by declaration or conduct give actual or constructive notice to the legal title holder, and must possess the property in a manner variously called "open," "notorious," or "hostile" for a period of seven years. *See generally* § 78–12–7, U.C.A. (1953) and annotated cases. Since it is rare for a party holding adversely to declare his intentions to the legal title holder, most of the cases deal with the question of whether the claimant's conduct in possessing the property was sufficiently open, notorious or hostile as to give a reasonably prudent title holder notice of the claimant's intention. It is generally agreed that, in order for the claimant's conduct to give notice, it must be conduct that is inconsistent with the rights of the owner. In *Scott v. Hansen,* 18 Utah 2d 303, 422 P.2d 525 (1966), this Court pointed out that the adverse possession statutes, §§ 78–12–7, U.C.A. (1953) *et seq.,* are part of Chapter 12, "Limitation of Actions," and that like other statutes of limitation, they provide for a time limit in which a claim or defense must be asserted, or it is barred.[2] The Court then stated at 18 Utah 2d 308, 422 P.2d 529:

... all statutes of limitation are predicated upon the proposition that the prescribed period does not begin to run against a party until a cause of action has arisen. In actions for possession of land, this does not occur until the true owner's right of possession has been so invaded as to give rise to a cause of action.

This standard was repeated in *Ash v. State,* Utah, 572 P.2d 1374, 1380 (1977), where the Court emphasized that in an action for possession of land, the prescribed period does not begin to run "... until the right of possession has been so challenged as to give rise to a cause of action."

Before applying this standard to the instant case, it is necessary to consider how the relationship between the parties as cotenants affects its application. It is established law that cotenants stand in a unique relationship of confidence and trust by reason of their community of interest. 20 Am. Jur.2d *Cotenancy and Joint Ownership* § 2 (1965); 86 C.J.S. *Tenancy in Common* § 17 (1954). Some jurisdictions, including Utah, have found the relationship to be a fiduciary one. *Heiselt v. Heiselt,* 10 Utah 2d 126, 349 P.2d 175 (1960). This relationship makes it particularly difficult for a party to claim adverse possession against his cotenant. In 1912, this Court considered the case of *McCready v. Fredericksen,* 41 Utah 388, 126 P. 316, and formulated the standard which has been used since then in cases of adverse possession between cotenants. *McCready,* an action to quiet title, involved two cotenants of a city lot, one of whom lived out of town. The other, the defendant's predecessor in interest, paid all taxes, held a tax deed, had his tenant occupy and cultivate the property, and sold the proper-

---

appellants and the court entered findings of fact which incorporated the findings of fact previously entered in the partial summary judgment to which the appellants were not party. The determination that the respondents' conduct constitutes successful adverse possession with adequate notice to the cotenants, however, is not a finding of fact but a conclusion of law. That the conclusions of law were mislabeled does not change their inherent character. *Coronado Mining Corp. v. Marathon Oil Co.,* Utah, 577 P.2d 957, 960 (1978). Where the issue is one of law, as in the instant case, this Court is not bound by the conclusions of the trial court and may determine the question. *Automotive Manufacturers Warehouse, Inc. v. Service Auto Parts, Inc.,* Utah, 596 P.2d 1033, 1036 (1979).

**2.** Note, however, that the running of a statute of limitation under Article 2, Chapter 12 of Title 78, Utah Code Ann. (1953), does not necessarily constitute adverse possession. See *Frederiksen v. LaFleur,* Utah, 632 P.2d 827 (1981) which distinguishes the construction and effect of the adverse possession statutes and tax title statutes.

ty to the defendant. Approximately two and one-half years later, the cotenant not in possession initiated the quiet title action. The Court found that the cotenancy relationship gave rise to two presumptions: first, possession and use by one cotenant is presumed to be possession and use by all cotenants, and second, any act calculated to protect the property against a lien or sale, or otherwise, will be presumed to be for the benefit of all cotenants unless the contrary is clearly made to appear. Although actual notice was not found necessary, the Court, quoting from *Elder v. McClaskey,* 70 F. 529, at 542, 17 C.C.A. 251 at 264 (1895), held that in order for a party to adversely possess property against his cotenant, the cotenancy must be disavowed "by acts of the most open and notorious character ..." which show clearly to the whole world the claimant's intention to exclude the rights of his cotenant. The Court found that the cotenant's payment of taxes and purchase of a tax deed inured to the benefit of all; he acquired not adverse possession but only a right of contribution from his cotenant. His possession of the property was considered to be possession by his cotenant as well. The only conduct by the cotenant in possession which rose to the level of such open and notorious character as to show clearly his intention to exclude his cotenant was his sale of the property to the defendant. However, since the plaintiff brought suit before the statutory period expired, no adverse possession was found.

The standards adopted in *McCready* have been applied in cases of adverse possession between cotenants arising since then. *Mathews v. Baker,* 47 Utah 532, 155 P. 427 (1916); *Rasmussen v. Sevier Valley Canal Co.,* 48 Utah 490, 160 P. 444 (1916); *Clot-*

*worthy v. Clyde,* 1 Utah 2d 251, 265 P.2d 420 (1954); *Heiselt v. Heiselt, supra.* In *Heiselt,* the Court stated that the payment of taxes "would not be such an act as would *unequivocally* inform her cotenants that she was claiming adversely ...." 10 Utah 2d at 130, 349 P.2d at 177 (emphasis added). In *Beckstrom v. Beckstrom,* Utah, 578 P.2d 520, 522 (1978), the Court also cited *McCready* and reiterated that "where one cotenant seeks to claim ownership of property against another, his claim must have been brought home to the other in some *clear and unequivocal* manner ...." (Emphasis added.) In *Sperry v. Tolley,* 114 Utah 303, 199 P.2d 542 (1948), the Court cited *McCready* and implied that mere length of time in exclusive possession, standing alone, is insufficient to find an ouster of the cotenant and adverse possession. *See also Pioneer Investment & Trust Co. v. Board of Education,* 35 Utah 1, 7, 99 P. 150, 151 (1909). In *Sperry,* the Court found no adverse possession between the cotenants although the cotenants in possession had possessed, cultivated and improved the property. The only act found sufficient to put the other cotenants on notice of an adverse claim was an advertisement for sale of a portion of the property.[3]

■■ In summary, it is apparent that this Court's interpretation of the adverse possession statutes requires that the statutory period be triggered by conduct which creates a cause of action. Further, when the party asserting adverse possession does so against his cotenant, that conduct must be such that the cotenancy is disavowed by acts of the most open and notorious character. Stated another way, the claimant's

---

**3.** These cases demonstrate that the difference between adverse possession between strangers and adverse possession between cotenants is not merely nominal. The cotenant must meet a higher, stricter standard of notice to his cotenant commensurate with his position of trust. Without this higher standard, most clearly set forth in *McCready,* adverse possession between cotenants is indistinguishable from ordinary adverse possession. For this reason, we believe the dissent is mistaken in its use of criteria from non-cotenant cases. The dissent refers to *Memmott v. Bosh,* Utah, 520 P.2d 1342 (1974), which contains a general statement of the correct cotenant rule from an Am.Jur. summary. However, for standards of conduct sufficient to manifest "a determination on the part of the one in possession to exclude the other cotenants," the dissent cites two cases which deal with parties who were not cotenants and who were not required to meet the higher standard.

conduct must give notice of his claim to his cotenant in some clear and unequivocal manner.[4]

In the instant case, the parties do not dispute that their predecessors in interest held undivided interests as cotenants in the property in question. The Schulders do not dispute the Bambergers' assertion that they have paid the taxes on the property. The issue is whether the Bambergers' conduct was such as to give rise to a cause of action so that the statute of limitations could begin to run against the Schulders. We hold that it was not.[5] In Utah, the Bambergers' actions in paying taxes and preserving title are presumed to be for the benefit of all cotenants and do not exclude the Schulders as cotenants or give them a cause of action. The same is true regarding whatever possession and use the Bambergers exercised and whatever reputation they had as sole owners of the property. In fact, the only observable conduct which could be construed as contrary to the Schulders' rights as cotenants is the isolated conveyance by the Bambergers which refers to an undivided interest in "all" of the mining claims, rather than an undivided one-sixth interest. The question is whether this conduct was an act of the most open and notorious character which disavowed the cotenancy, giving notice to the Schulders of the Bamberger claim in a clear and unequivocal manner. We hold that it was not. To do otherwise would be contrary to established Utah law and would tend to abrogate the relationship of confidence and trust which should exist between cotenants.

The judgment is reversed and this case is remanded for a determination of the amount owed respondents by appellants for their share of taxes paid plus accrued interest. *McCready v. Frederickson, supra.* Upon payment thereof, judgment quieting title in appellants' claims of interest should be entered. No costs awarded.

OAKS and HOWE, JJ., concur.

HALL, Chief Justice, dissenting.

I do not join the main opinion because it departs from the rules of appellate review which preclude this Court from substituting its judgment for that of the trial court.

The main opinion rejects out of hand the Findings of Fact, Conclusions of Law, and Judgment of the trial court simply by stating that the "issues can be resolved as a matter of law." I cannot accept that *ipse dixit.*

The stance taken by the main opinion ignores the fact that judgment in an action to quiet title cannot be entered without the taking of proof. U.C.A., 1953, 78–40–13 specifically so provides, as follows:

> When the summons has been served and the time for answering has expired, the court shall proceed to hear the cause as in other cases, and shall have jurisdiction to examine into and determine the legality of the plaintiff's title and of the title and claims of all the defendants and of all unknown persons, and to that end must not enter any judgment by default against unknown defendants, *but must in all cases require evidence of plaintiff's title and possession and hear such evidence as may be offered respecting the claims and title of any of the defendants, and must thereafter enter judgment in*

---

**4.** In some jurisdictions, the standard is even higher. For example, in *Smart v. Luiki,* Hawaii App., 640 P.2d 1172 (1982), the court found that the claimants had not met the Hawaii standard of good faith towards a cotenant which in most circumstances requires *actual notice* to a cotenant of an adverse claim. Constructive notice will satisfy the good faith requirement in three limited circumstances: (1) where the tenant in possession has no reason to suspect the existence of a cotenancy, (2) where a tenant in possession makes a good faith effort to locate cotenants but is unable to find them, and (3) where the cotenants out of

possession have actual knowledge of the adverse claim.

**5.** Neither the summary of the facts by the dissent nor a careful examination of the record reveals any action by the Bambergers inconsistent with their status as cotenants with the Schulders. Thus, the Bambergers, as plaintiffs, have failed to carry their burden of proof. It was not necessary for the Schulders to offer evidence or counter-affidavits in order for the court to rule for the defendants as a matter of law.

*accordance with the evidence and the law.* The judgment shall be conclusive against all the persons named in the summons and complaint who have been served and against all such unknown persons as stated in the complaint and summons who have been served by publication. [Emphasis added.]

The trial court accordingly set this matter for trial, at which time the Bambergers presented their evidence of title and possession. The evidence consisted of the pleadings, depositions, exhibits and affidavits. The Schulders offered no evidence or counter-affidavits, notwithstanding the fact that they raised the following affirmative defenses in their Answer: 1) that the Bambergers' possession was with their consent; and 2) that the Bambergers' payment of taxes duly assessed against the property was "voluntary," the implication being that they paid them for the benefit of themselves and the Schulders as well.

The record before us contains substantial evidence to support the conclusion of the trial court that the Bambergers' possession of the property was open, notorious, continuous, exclusive and adverse to the Schulders, and that the Schulders knew, or reasonably should have known, of the adverse claim of the Bambergers. Specifically, the Bambergers' possession of the property dates back to 1911, without objection by the Schulders, and they have paid the taxes thereon for a period of 40 years, and presumably since 1911. The Schulders did not assert any claim to the property, nor did they pay or offer to pay any taxes thereon; in fact, there was no contact of any kind between the Bambergers and the Schulders for at least 40 years. The Bambergers alone defended their title to the property against the county assessor to protect it against forced sale. Persons acquainted with the property sought out the Bambergers as the sole owners thereof for the purpose of adjusting mining claim boundaries. Russell G. Schulder, the original co-tenant of Ernest Bamberger, did not assert any claim to the property from the date of

its acquisition in 1911 until the date of his death in 1926. The administrator of his estate did not list the property as an asset of the deceased in the inventory of other real property filed in the probate of his estate. However, the subject property was listed as an asset in the estate of Ernest Bamberger.

Faced with the foregoing state of facts, coupled with the failure of the Schulders to offer any evidence whatsoever in support of their affirmative defenses, or to otherwise explain that the Bambergers' exclusive possession of the property over a period of 68 years was not adverse to their interests, it was reasonable and proper for the trial court to conclude that the conduct of the Bambergers was such as to place them on notice of the adversity of their claim so as to invoke the running of the statute of limitations. Although the statute of limitations does not run between co-tenants unless and until there is manifested a determination on the part of the one in possession to exclude the other co-tenants,[1] the facts of this case clearly meet that standard.

As was stated by this Court in *Toltec Ranch Co. v. Babcock:*[2]

The land was occupied and used *the same as other lands were in the neighborhood.* The possession was open, notorious ... and under claim of right. It must, therefore, necessarily be deemed to have been adverse to the holder of the legal title, and *such long-continued possession may be deemed to have been adverse, though not in character hostile.* Where one is shown to have been in possession as owner for the period of limitation, apparently as owner, *and such possession is not explained or otherwise accounted for, it will be presumed to have been adverse.* [Emphasis added.]

An owner is bound to know of the adverse conduct of his co-tenant. As was stated in *Alaska Bank v. Linck:*[3]

The owner need not actually know about the presence of an adverse possession; what a *duly alert owner would have*

---

1. *Memmott v. Bosh,* Utah, 520 P.2d 1342 (1974).

2. 24 Utah 183, 66 P. 876 (1901).

3. Alaska, 559 P.2d 1049 (1977).

*known, the owner is charged with knowing,* and where possession is otherwise proven, courts generally recognize that *community repute as well as physical visibility is relevant evidence that the true owner has been put on notice.* [Emphasis added.]

I would affirm the judgment of the trial court.

STEWART, J., concurs in the dissenting opinion of HALL, C.J.