2011 UT App 358

Michael WARD, Plaintiff, Appellant, and Cross-appellee,

v.

Caroline Coats GRAYDON, Defendant and Appellee,

and

Peter Coats, Defendant, Appellee, and Cross-appellant.

No. 20090714–CA.

Court of Appeals of Utah.

Oct. 27, 2011.

Brad C. Smith and Samuel A. Hood, Ogden, for Appellant and Cross-appellee.

Bryce D. Panzer, Salt Lake City, for Appellee.

Craig S. Cook, Salt Lake City, for Appellee and Cross-appellant.

Before Judges ORME, ROTH, and CHRISTIANSEN.

## OPINION

ROTH, Judge:

¶ 1 Plaintiff Michael Ward (Nephew) appeals the district court's denial of his motion for summary judgment against Defendant Carolyn Coats Graydon (Aunt) as well as the district court's grant of summary judgment to Aunt. Defendant Peter Coats (Uncle) cross-appeals the district court's grant of summary judgment to Nephew. We affirm in part and reverse and remand in part.

## BACKGROUND

¶ 2 Uncle owned two parcels of property, which throughout the course of this litigation have become known as the North parcel and the South parcel (collectively, the Property). The Property was subject to trust deeds in favor of Uncle's mother—and Nephew's grandmother—Isabel Coats (Grandmother).[1] In late 2005, Grandmother initiated foreclosure proceedings on the Property. Ultimately, Uncle and Grandmother entered into a stipulation, which in part required Grandmother to cancel the default notice and in return granted Grandmother ownership of an undivided 9.82% interest in the Property (the fractional interest), as tenant in common with Uncle. There is no dispute that the fractional interest was superior to Grandmother's trust deeds, which continued to encumber Uncle's interest in the Property. In November 2005, Grandmother transferred the frac-

tional interest to Nephew, and Nephew and Uncle became cotenants. In early 2006, however, Grandmother again initiated foreclosure proceedings under the trust deed.[2]

¶ 3 In the meantime, Uncle and Aunt were going through a divorce. A bifurcated divorce decree was entered in mid-2005; and divorce proceedings remained pending in order to resolve, among other things, property distribution. Aunt did not personally own any interest in the Property but validly claimed an interest in it as marital property. During the divorce proceedings, Aunt was granted a special power of attorney to facilitate the sale of marital property, including the Property. Aunt recorded a lis pendens on the Property, giving notice of the divorce proceedings and her marital property claim.[3]

¶ 4 In the course of the renewed foreclosure proceedings, a third party made an offer of $5.2 million to purchase the North parcel—an offer that Aunt, Uncle, and Nephew wanted to accept. In order for the sale to proceed, however, Aunt would have to release any claim she had to the Property by removing the lis pendens and executing a quitclaim deed or other documents necessary to clear the title of any claim she might have. Aunt would agree to release her claim in the Property only if Uncle's share of the sale proceeds was placed in escrow pending resolution of the property distribution issues in the divorce proceeding. She insisted on the funds being placed in escrow because, as she put it, she had "good reason to fear that [Uncle] would violate [a] court order if he received the proceeds [from the] sale," leaving her with only the prospect of an uncertain and possibly costly recovery process should the court eventually rule that she was entitled to a share of the sale proceeds. Uncle refused Aunt's condition. The sale did not close, and the North parcel was eventual-

---

1. Specifically, both the North parcel and the South parcel were subject to a trust deed that was recorded in 1995. The North parcel was subject to a second trust deed that was recorded in 1999.

2. To be accurate, in late 2005, Grandmother transferred her interest in the 1999 trust deed to various trusts controlled by David Ward, who is Nephew's father and Uncle's brother, and the

renewed foreclosure proceedings were initiated under both the 1995 and 1999 trust deeds. We however refer to the foreclosure proceedings as being initiated by Grandmother for ease of explanation.

3. In November 2008, a final divorce decree was entered in Aunt and Uncle's divorce action.

ly sold at a trustee's sale for $3.6 million. Among the purchasers were several family trusts whose beneficiaries included Grandmother and Nephew as well as other relatives. Nephew also individually purchased a joint interest. In order to facilitate the sale at this price, Nephew voluntarily subordinated his fractional interest in the North parcel to the trust deed so that the trustee's sale would include 100% of the North parcel's ownership. As a result, Nephew's fractional interest in the North parcel was sold, and Nephew received 9.82% of the excess sale proceeds after costs—a total of $195,397.28.[4]

¶ 5 Nephew sued Uncle and Aunt to recover the difference between the sale proceeds he would have received had the North parcel sold for $5.2 million instead of $3.6 million. Nephew and Aunt filed cross-motions for summary judgment. The district court granted Aunt's motion for summary judgment and denied Nephew's motion against Aunt "for the reasons set forth in [Aunt's] memoranda." The court, however, granted Nephew's motion for summary judgment against Uncle because Uncle had "defaulted by filing no opposition to [Nephew's] [m]otion for [s]ummary [j]udgment." Nephew appeals, and Uncle cross-appeals.

## ISSUES AND STANDARD OF REVIEW

¶ 6 Nephew argues that the trial court erred in denying his motion for summary judgment against Aunt and in granting Aunt's motion for summary judgment. Similarly, Uncle argues that the trial court erred in granting Nephew's motion for summary judgment against him. "An appellate court reviews a ... grant or denial of summary judgment for correctness...." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (internal quotation marks omitted).

## ANALYSIS

### I. Nephew's Appeal

¶ 7 In support of his claims against Aunt and Uncle, Nephew asserts that cotenants owe a fiduciary duty to one another

because they are " 'in a unique relationship of confidence and trust by reason of their community of interest.' " (Quoting *Olwell v. Clark*, 658 P.2d 585, 587 (Utah 1982).) According to Nephew, Aunt effectively became a cotenant with him and with Uncle due to the interest she had in and the control she was able to exercise over the Property by virtue of her claim of a marital interest in and court-ordered power of attorney over Uncle's interest. Nephew asserts that as their cotenant, Aunt took on the accompanying fiduciary duty to both Uncle and Nephew. The basis for Nephew's claims, therefore, is his assertion that Aunt and Uncle breached a cotenant's fiduciary duty to him when they failed to cooperate in the sale of the North parcel for an advantageous price. Aunt responds to Nephew's claims by arguing that Nephew cannot establish that such a fiduciary duty exists among cotenants; that even if such a fiduciary duty existed, he cannot establish that Aunt became a cotenant with Nephew and Uncle; and that even if she were a cotenant and such a duty existed, Nephew caused his own damages by voluntarily subordinating his interest in the North parcel to the trust deed. The district court did not specify any particular basis for its decision to deny Nephew's motion for summary judgment against Aunt and to grant Aunt's motion for summary judgment against Nephew but instead stated that its decision was based on "the reasons set forth in [Aunt's] memoranda." Ultimately, we conclude that the district court correctly denied Nephew's motion for summary judgment against Aunt and granted summary judgment to Aunt on a basis similar though not identical to Aunt's argument that Nephew had invited his own loss by subordinating his fractional interest to the trust deed. Because we resolve the case on this alternative ground, we do not address whether it is possible for Aunt to become a constructive cotenant with Nephew and Uncle.

¶ 8 Based on how he presents his argument, Nephew's claims are not so much based on a general notion that cotenants

---

4. In addition to the costs of the sale and attorney fees, the proceeds from the sale of the North parcel were used to satisfy the interest and principal on both the 1995 and 1999 trust deeds encumbering the North parcel and the South parcel.

have a duty to agree to the sale of jointly-owned property at the request of other co-tenants, even for an advantageous price. Rather, his claims are based on the premise that the "imminent threat" of a foreclosure that would "diminish[ ] the value of a property" to the "detriment of all the co-tenants" creates a fiduciary duty from each cotenant to the others to avoid the collective economic loss by cooperating in the sale of the jointly-owned property to a willing buyer for an advantageous price. Thus, according to Nephew, Aunt and Uncle "adversely affect[ed] the interests of the other co-tenants"—namely, Nephew—and breached this fiduciary duty when they refused to cooperate in the sale of the North parcel to a buyer who would pay top price for it. And Aunt's and Uncle's intransigence ultimately resulted in the North parcel being sold for a diminished value at a foreclosure sale to the detriment of all the cotenants, but specifically to the detriment of Nephew.

 ¶ 9 Aunt responds by arguing that Nephew "cannot direct this [c]ourt to any authority for the proposition he advocates, either in or outside this state." Nephew provides no direct support for his premise that cotenants have a duty to sell property to avoid the loss to each when an "imminent threat" of a foreclosure threatens to "diminish[ ] the value of a property" to the "detriment[ ] of all co-tenants." Rather, Nephew relies on case law for the proposition "that co-tenancy gives rise to a presumption that 'any act calculated to protect the [jointly-owned] property against a lien or sale, or otherwise, will be presumed to be for the benefit of all cotenants.'" (Quoting *Sweeney Land Co. v. Kimball*, 786 P.2d 760, 762 (Utah 1990).) Nephew asserts that the converse must be true: that "any act, including a sale or foreclosure, that diminishes the value of a property is thus presumed to be to the detriment of all the co-tenants." Nephew then takes his argument a step further to assert that "[a]ctions by a co-tenant that adversely affect the interests of the other co-tenants violate the confidence and trust inherent in this community of interest, and may be a breach of a co-tenant's fiduciary duty." Nephew provides little support for what appears to be a significant extension of the concept of fiduciary duty among cotenants, a type of duty that our case law has never found to be a general concomitant of the joint-ownership relationship but has instead recognized only in limited circumstances.[5] Thus, although there are "*some* situations [in which] a fiduciary relationship *may* exist between tenants in common[,] ... *the mere fact of cotenancy alone does not create such a relationship.*" *Rio Algom Corp. v. Jimco Ltd.*, 618 P.2d 497, 506 (Utah 1980) (emphases added); *see also Jolley v. Corry*, 671 P.2d 139, 141 (Utah 1983) (noting that despite earlier decisions concerning cotenants in the context of a tax sale and adverse possession, it did not need to determine whether cotenants owed "*a fiduciary duty to act for all cotenants in any and all circumstances*" (emphasis added)). Rather, "[a] fiduciary relationship between cotenants is usually found

---

5. The cases cited by Nephew generally involve fact patterns where one cotenant attempts to adversely possess property from another cotenant. *See generally Sweeney Land Co. v. Kimball*, 786 P.2d 760 (Utah 1990); *Olwell v. Clark*, 658 P.2d 585 (Utah 1982). In those cases, our supreme court has consistently determined that it is generally "difficult for a party to claim adverse possession against his cotenant," not because a fiduciary duty owed among cotenants precludes doing so, but because "to adversely possess property against [a] cotenant, the cotenancy must be disavowed by acts of the most open and notorious character ... which show clearly to the whole world the claimant's intention to exclude the rights of his cotenant." *Olwell*, 658 P.2d at 587–88 (omission in original) (internal quotation marks omitted). And this disavowal of the cotenancy relationship must be open and notorious due to a general presumption that, given the "unique relationship of confidence and trust" that exists among cotenants, "any act calculated to protect the property against a lien or sale, or otherwise, will be presumed to be for the benefit of all cotenants." *Id.* However, this presumption will only be made "*unless the contrary [intent] is clearly made to appear.*" *Id.* at 588 (emphasis added); *see also Sweeney Land Co.*, 786 P.2d at 762–63 (explaining the same principles of adverse possession among cotenants). Other cases cited by Nephew similarly do not support his position. *See, e.g., Jolley v. Corry*, 671 P.2d 139, 140–41 (Utah 1983) (concluding that a cotenant's purchase of land at a sale resulting from that cotenant's own default on a debt secured by the land does not extinguish the other cotenants' ownership interest, basing that decision on "the equitable principle that one should not profit by his own wrong" and declining to decide whether any fiduciary duty existed among the cotenants).

when a cotenant of real property undertakes to act on behalf of another cotenant or takes advantage of other cotenants, often in the course of acquiring paramount title or ousting other cotenants"—circumstances that are not present here. *See Rio Algom Corp.*, 618 P.2d at 506.

¶ 10 Even accepting arguendo Nephew's premise that his cotenants had a fiduciary duty to sell their interests in the Property for an advantageous price in the face of imminent foreclosure, such a duty was not triggered here as against Aunt or Uncle because the foreclosure process did not threaten Nephew's own fractional interest. According to Nephew, as the successor in interest to Grandmother, he owned the fractional interest in the Property free of the trust deed. Thus, the "imminent threat" of the foreclosure sale threatened to "diminish[ ] the value of [the P]roperty" only to the "detriment of" Aunt and Uncle, not Nephew. Under these circumstances, only Uncle's interest in the Property—along with any claim Aunt may have had to the Property in connection with the divorce—could have been foreclosed by a sale under the trust deed. Nephew's superior fractional interest would have remained untouched by the foreclosure of the inferior deed of trust, with only the identity of his cotenant subject to change.[6]

¶ 11 Nevertheless, as Nephew admitted in his complaint, he had voluntarily subordinated his interest in the North parcel to the trust deed in order to maximize the sale proceeds from the trustee's sale, at which he and other relatives planned to purchase the North parcel free of all other interests. As a result, Nephew's interest was sold at the trustee's sale for what he claimed to be a diminished value. Any such loss, however, was not the result of a forced foreclosure but was the result of his own decision that the sale of the North parcel at the available price was more to his advantage than simply retaining his superior fractional interest, which he legally was in a position to do. It is therefore inaccurate to present his claims as

being based on a fiduciary duty that exists when the "imminent threat" of a foreclosure will "diminish[ ] the value of a property" to the "detriment of all cotenants." Instead, because there was no actual threat to Nephew's interest that would have triggered a hypothetical fiduciary duty to salvage value in the face of an imminent foreclosure, his claim is more accurately an assertion that cotenants have a general fiduciary duty to sell their property for an advantageous price if one cotenant desires to do so. Nephew has provided no authority that such a duty exists, nor is the existence of such a duty obvious. *See generally Rio Algom Corp.*, 618 P.2d at 506 (stating that although there are "*some* situations [in which] a fiduciary relationship *may* exist between tenants in common[,] ... *the mere fact of cotenancy alone does not create such a relationship*" (emphasis added)); *see also Jolley*, 671 P.2d at 141 (declining to determine whether cotenants owed "*a fiduciary duty to act for all cotenants in any and all circumstances*" (emphasis added)). Thus, Nephew was not threatened with the unavoidable loss by foreclosure but nonetheless voluntarily subordinated his fractional interest to the trust deed because he desired to take advantage of the anticipated gain he would realize from the sale of the entire North parcel. Accordingly, the district court appropriately denied Nephew's motion for summary judgment and granted Aunt's motion for summary judgment.

## II. Uncle's Cross–Appeal

■ ¶ 12 Uncle failed to file a response to Nephew's motion for summary judgment. Rather, Uncle himself appeared at the summary judgment hearing and verbally explained to the district court his opposition to the motion. In granting summary judgment against Uncle in Nephew's favor, the district court stated that Uncle had "effectively defaulted on this matter" by not filing a written opposition to summary judgment and concluded that Uncle's statements made at the hearing were not "sufficient to defeat [Neph-

---

**6.** If the changed identity of the cotenant became problematic, Nephew could have petitioned to partition the Property. *See generally* Utah Code Ann. § 78B–6–1201 (2008) ("A person who is a

joint tenant or tenant in common with another of real property may bring an action to partition the property for the benefit of each tenant.").

ew's] motion for summary judgment as [to Uncle]." The district court, however, simultaneously denied Nephew's motion for summary judgment against Aunt.

¶ 13 Looking to the entirety of the district court's decision to grant Nephew's motion for summary judgment against Uncle but to deny that same motion for summary judgment against Aunt, it appears that the district court was primarily persuaded that it could not "conclude ... as a matter of law that [Aunt] owe[s] ... a duty" to Nephew because to do so would essentially conflate what are separate principles of cotenancy and principles governing the equitable distribution of marital property. The district court thus concluded that "the duty that [Nephew] ... seek[s] to impose on [Aunt] does not exist" and cannot be created "by way of whatever allocation of responsibility was developed under the marital dissolution." The district court stated that although Nephew "may very well be entitled to th[e] claim [that cotenants owe their co-owners a fiduciary duty] as against [Uncle] who was [in fact Nephew's] co-tenant," it was not convinced "as to [Aunt] that ... [such a] duty existed."

¶ 14 Even acknowledging what the district court apparently considered to be the primary flaw in Nephew's claims against Aunt—namely, Nephew's attempt to characterize Aunt as having become a cotenant—the district court nonetheless "adopt[ed] the analysis that [Aunt] presented in [her] moving papers." In addition to arguing that she was not a cotenant, Aunt's analysis included an argument that the fiduciary duty relied upon by Nephew as the basis for his claims did not exist—specifically, that there is "no authority for the proposition that a cotenant owes a fiduciary duty ... to sell his interest in [jointly-owned] property." Aunt further argued that Nephew caused his own loss by having voluntarily subordinated his interest in the Property to the trust deed. Although the district court theorized that Nephew's claims may have a more credible basis when brought against an actual cotenant—such as Uncle—than against a constructive cotenant—such as Nephew claimed Aunt to be—the court seemed uncertain about whether such a fi-

duciary duty among cotenants existed at all and implicitly reached such a decision by adopting Aunt's analysis. The district court also implicitly adopted Aunt's argument that Nephew caused his own damages by voluntarily subordinating his interest in the Property to the trust deed—a position functionally similar to the basis on which we have affirmed the district court's grant of summary judgment to Aunt, against Nephew.

¶ 15 Summary judgment is only proper if "there is no genuine issue as to any material fact" and if "the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c); *see also Orvis v. Johnson*, 2008 UT 2, ¶ 10, 177 P.3d 600 ("A summary judgment movant must show both that there is no material issue of fact and that the movant is entitled to judgment as a matter of law." (emphasis omitted)). By failing to respond to Nephew's motion for summary judgment, Uncle failed to challenge the facts as presented by Nephew, leaving those facts essentially undisputed. *See generally Scott v. Majors*, 1999 UT App 139, ¶ 17, 980 P.2d 214 (accepting facts as undisputed when a party opposing summary judgment failed to file responsive affidavit or other evidentiary materials allowed by rule 56(e) of the Utah Rules of Civil Procedure). However, Uncle's failure to respond to Nephew's motion for summary judgment cannot itself be a basis for awarding summary judgment to Nephew because "[w]here the party opposed to the motion submits no documents in opposition, the moving party may be granted summary judgment *only ... if he is entitled to judgment as a matter of law.*" *See Olwell v. Clark*, 658 P.2d 585, 586 (Utah 1982) (emphasis added).

¶ 16 It was Nephew's burden to prove that he was entitled to judgment as a matter of law. *See Orvis*, 2008 UT 2, ¶ 10, 177 P.3d 600 ("Where the moving party would bear the burden of proof at trial, the movant must establish each element of his claim in order to show that he is entitled to judgment as a matter of law."). To be entitled to judgment as a matter of law, Nephew was required to establish that Uncle owed him a fiduciary duty as a cotenant, that Uncle had breached that duty, and that the breach caused Neph-

ew damage. Given the legal arguments Aunt presented to the district court in opposition to Nephew's motion for summary judgment and the district court's wholesale adoption of those legal arguments, there is an inherent inconsistency between the district court's denial of Nephew's motion for summary judgment against Aunt but simultaneous grant of the same motion against Uncle based on substantially identical facts and legal arguments. Because of this inconsistency, we are not convinced that Nephew adequately bore his burden of proving to the district court that he was entitled to judgment as a matter of law against Uncle. Rather, the court simply granted summary judgment against Uncle by default, without deciding whether Nephew had borne his burden of showing he was entitled to judgment as a matter of law, and simultaneously rejected Nephew's legal arguments. Further, we have affirmed the district court's denial of Nephew's motion for summary judgment against Aunt based on an analysis of the facts and applicable law that would apply equally to Uncle. Accordingly, we reverse the district court's grant of summary judgment against Uncle.

## CONCLUSION

¶ 17 We affirm the district court's denial of Nephew's motion for summary judgment against Aunt as well as the district court's grant of summary judgment to Aunt against Nephew. We reverse the district court's grant of summary judgment against Uncle. Uncle, however, did not move for summary judgment against Nephew; we therefore only reverse the district court's grant of summary judgment against Uncle and remand for further proceedings.

¶ 18 WE CONCUR: GREGORY K. ORME and MICHELE M. CHRISTIANSEN, Judges.